Kathy M. CUTCHEMBER, Appellant,

v.

Joseph PAYNE, Jr., Appellee.

No. 81–1045.

District of Columbia Court of Appeals.

Argued July 26, 1983.

Decided Sept. 19, 1983.

Diana M. Savit, Asst. Corp. Counsel, Washington, D.C., with whom Judith W. Rogers, Corp. Counsel, and Charles L. Reischel, Deputy Corp. Counsel, Washington, D.C., were on brief, for appellant. Philip T. VanZile III, Asst. Corp. Counsel, Washington, D.C., also entered an appearance for appellant.

David A. Lee, Washington, D.C., for appellee.

Before NEBEKER, PRYOR and TERRY, Associate Judges.

NEBEKER, Associate Judge:

This is an appeal of a trial court ruling disallowing the introduction of the results of a human leukocyte antigen (HLA) test into evidence. These results would have demonstrated a high degree of probability that appellee fathered appellant's child. Implicit in the trial court's ruling is the determination that an HLA test is a blood test within the purview of D.C.Code § 16–2343 (1981), the results of which are, therefore, inadmissible as affirmative proof of paternity over appellee's objection. We hold that an HLA test is not a blood test within the meaning of § 16–2343 and that the results were improperly excluded. Accordingly, we reverse and remand for a new trial.

Appellant, Kathy M. Cutchember, filed a petition for support for her minor child, Kesha, in the Circuit Court for Prince George's County, Maryland, pursuant to the Uniform Reciprocal Enforcement of Support Act (URESA). *See* Uniform Support Act, D.C.Code §§ 30–301 to –324 (1981); URESA, Md.Ann.Code, art. 89C, §§ 1–30 (1957). The petition for support alleged that appellee, Joseph Payne, Jr., a District of Columbia resident, is Kesha's father. Kesha was born to appellant out of wedlock on February 23, 1974. As the initiating state under URESA, Maryland transferred the petition to the District of Columbia to obtain jurisdiction over Payne, and to determine whether he owed Kesha a duty of support and, if so, in what amount. Appellee denies paternity.

During discovery, both parties, through counsel, agreed to submit to an HLA test and to blood grouping tests. The results of the HLA test demonstrated that 99.96 percent of the population could not have fathered this child and that Payne is within the small remaining class of men who carry the necessary HLA markers. At trial, however, Payne objected to the admission of the HLA results, based upon relevancy and the provisions of § 16–2343. This statute provides in pertinent part:

Blood tests.

When it is relevant to an action over which the Division has jurisdiction under section 11–1101, the court may direct that the child, respondent and the other parent if available submit to one or more blood tests to determine whether or not the respondent can be excluded as being the father or mother, as the case may be, of the child, but the results of the test may be admitted as evidence only in cases where the respondent does not object to its admissibility.

The trial court acknowledged relevance but ruled that the language of the statute precluded the introduction of the test results over the objection of Payne. Based upon the remaining evidence in the case, the trial court found that Cutchember had failed to prove that Payne was Kesha's father. This appeal followed.

■ The District of Columbia's first blood test statute, substantially similar to § 16–2343, was enacted in 1951. *See* Pub.L. No. 81–917, 64 Stat. 1225 (1951). At that time, the only known blood tests used for paternity testing were the ABO, MN and Rh-Hr tests. These tests, commonly known as the Lansteiner blood grouping tests, utilize factors found within red blood cells. Red blood cell groupings involve only a small number of variables and, while they may conclusively eliminate the possibility of

paternity, they are inconclusive proof of parentage because the probability of paternity based solely upon nonexclusion is usually not very high. *See* Terasaki, *Resolution by HLA Testing of 1000 Paternity Cases Not Excluded by ABO Testing,* 16 J.Fam.L. 543 (1977–78). Statutes such as D.C.Code § 16–2343 which limit the use of blood test results to cases in which paternity can be excluded were enacted in order to prevent the improper and prejudicial use of a finding of non-exclusion based upon blood grouping tests.

There is a great difference, however, between red blood cell grouping tests and HLA tissue tests. The HLA test was developed around 1966 to aid in matching tissue types for organ transplant operations. For practical reasons, HLA testing is generally performed upon white blood cells, although a component, leukocyte cells, is found throughout the body's tissues. HLA tests involve a large number of factors and provide much more conclusive proof of parentage, usually involving a 90 percent or greater probability of paternity. *See* Terasaki, *supra* at 552–53.

██ Appellee argues that, regardless of the fact that other bodily tissues could have been used for purposes of the HLA test, the fact remains that white blood cells were used, thus rendering the HLA test a "blood test" subject to the provisions of § 16–2343. We disagree. We base our decision upon several grounds. First, we note that, unlike blood grouping tests, blood is not an essential ingredient of the HLA test, but, merely a convenient testing medium. Thus, rather than being a "blood test," an HLA test is in actuality a "tissue test" generally performed upon white blood cells.

██ Second, the legislative history and context of § 16–2343 reveal that the statute was aimed at eliminating improper uses of red blood cell grouping tests and do not support its extension to HLA test results. The dangers of statistical unreliability and undue prejudice presented by the introduction of red blood cell grouping tests are not present with HLA results. HLA findings are highly probative of paternity and not unduly speculative. Of course, the trier of fact must realize that HLA results alone are not conclusive proof of paternity. "[E]ven under such testing the possibility remains that another member of that minority [of potential fathers] might have been around at [the] time of conception." *Crain v. Crain,* 104 Idaho 666, 662 P.2d 538, 539 (1983). *See also Ahmad v. Ahmad,* 110 Wash.D.L.Rptr. 1173 (May 25, 1982). Accordingly, assignation access remains of critical significance.

██ Finally, we note that the District of Columbia's blood test statute was enacted prior to the development of HLA testing. Congress cannot, therefore, be presumed to have intended to prohibit a test which was not even developed at the time the statute was enacted and which has markedly different characteristics from the blood grouping tests upon which the statute was based. *See Phillips ex rel. Utah State Department of Social Services v. Jackson,* 615 P.2d 1228, 1233 (Utah 1980) (a statute enacted with reference to blood tests based on red cell groupings was not intended to apply to HLA which is of a different nature); *Cramer v. Morrison,* 153 Cal.Rptr. 865, 869, 88 Cal.App.3d 873, 880 (1974) (drafters of the Uniform Act on Blood Tests to Determine Paternity did not have in mind tests of the nature of HLA).

The failure of the trial court to consider the HLA test results might well have altered its ultimate finding in the case. We hold, therefore, that the trial court's rejection of the HLA evidence was in error. We reverse and remand for a new trial.

*So ordered.*