**DISTRICT OF COLUMBIA, Appellant,**

v.

**J.R.M., Appellee.**

**No. 85-1350.**

District of Columbia Court of Appeals.

Argued Dec. 16, 1986.
Decided March 6, 1987.

Edward E. Schwab, Asst. Corp. Counsel, with whom John H. Suda, Acting Corp. Counsel at the time brief was filed, and Charles L. Reischel, Deputy Corp. Counsel, were on brief, for appellant.

No appearance was entered or brief filed on behalf of appellee.

Before FERREN, BELSON, and TERRY, Associate Judges.

FERREN, Associate Judge:

The District of Columbia appeals the denial of its petition to establish paternity and to order appellee, J.R.M., to pay child support. Among its contentions, the District argues that Judge Bacon erred by requiring the District to prove paternity. Earlier, Judge Beaudin had stricken J.R.M.'s answer to the petition as a sanction for his failure to take a Human Leukocyte Antigen (HLA) test, which he had previously agreed to take. In the District's view that sanction, eliminating J.R.M.'s denial of paternity, in effect established paternity and thus left to be determined only the amount of support he must pay. Judge Bacon, however, interpreted the sanction as placing the case in the same posture as one

in which the putative father had simply failed to answer. In such cases the petitioner must still prove the alleged paternity by a preponderance of the evidence, but may do so at an *ex parte* hearing. *See* Super.Ct.Dom.Rel.R. 405(e). Accordingly, Judge Bacon took testimony from the mother. After hearing her testimony, however, the judge ruled that the District had not established paternity. We need not address Judge Bacon's ruling, for we find ambiguous Judge Beaudin's sanction order on which Judge Bacon premised the hearing; it could reasonably be interpreted as either Judge Bacon or the District interprets it. We thus remand the case to Judge Beaudin so that he may clarify his order and, if necessary, reconsider in light of this opinion what the appropriate sanction should be for J.R.M.'s refusal to take the HLA test.

## I.

The District of Columbia brought this action on behalf of the child whose paternity is at issue here and of her mother. *See* D.C.Code § 16–2341(a) (1981). J.R.M., the alleged father, filed an answer denying paternity. The court then entered an order, to which the parties consented, requiring the mother, child, and J.R.M. to take HLA tests at a specified time and place. After J.R.M. failed to appear for his test, the District moved to have the court strike his answer and to set an *ex parte* hearing. Judge Beaudin ordered that "Respondent's Answer be and hereby is stricken, and that an *ex parte* hearing be held on the 16th day of January, 1985." The order does not state whether the contemplated hearing would include proof of paternity or would address only the amount of support.

At the hearing before Judge Bacon, the District called the mother to testify about the date of the child's birth, the nature and exclusivity of her relationship with J.R.M. during the period in which the child was conceived, and J.R.M.'s behavior toward the child since her birth. Counsel for J.R.M. was present and cross-examined the mother. At the close of the mother's testimony, Judge Bacon ruled that the District had failed to prove by a preponderance of

the evidence that J.R.M. was the child's father. The judge reached this conclusion even though the only evidence presented was the mother's testimony. Apparently, Judge Bacon found the mother to be so confused about the relevant dates, and so prone to certainty in adopting incompatible dates for events such as conception and birth, that her testimony was simply not credible evidence of J.R.M.'s paternity.

The District moved for reconsideration, arguing that a default should have been entered as to paternity or, in the alternative, that although the District failed to satisfy the court at the *ex parte* hearing, the case should have been set for a full trial. Judge Bacon denied the motion and reiterated her previous conclusion that the mother's testimony "was not credible, clear or convincing and did not provide proof by a preponderance of the evidence" that J.R.M. was the child's father. This appeal followed.

## II.

The District's primary contention on appeal is that Judge Beaudin's sanctions order required the trial court to rule that J.R.M. had admitted paternity. Therefore, according to the District, the court should not have required proof of paternity at the *ex parte* hearing.

The sanctions order is ambiguous. By requiring that "Respondent's Answer be and hereby is stricken, and that an *ex parte* hearing be held on the 16th day of January, 1985," Judge Beaudin crafted an order susceptible of two interpretations: either the order was intended to impose the ultimate sanction on J.R.M. by treating the allegation of paternity as admitted, or it was intended to punish him only to the extent of submitting the case to *ex parte* determination of paternity rather than a full adversarial trial of the issue.

Super.Ct.Dom.Rel.R. 405(e) states that when the respondent in a paternity suit does not file a timely answer "or otherwise fails to respond, ... the issues of paternity and amount of support may be heard and determined ex parte...." The rule implic-

itly bars determination of paternity by default on the petitioner's pleadings alone:

> If the court is satisfied that (1) there is uncontroverted proof that respondent is the natural father as alleged by the petitioner, and (2) justice to the child requires an immediate judicial determination of the petition, ... it may enter an order adjudging respondent to be the natural father of the child and fixing an appropriate amount of support.

Thus, the rules appear to incorporate a policy that the court should not determine paternity solely by default but should always require the petitioner to present persuasive evidence that the respondent is in fact the father.

One may argue that this policy, applicable when no answer is filed because of the putative father's own choice or negligence, applies with the same force when the putative father has no answer on file because of a sanction striking his answer. On this view, the facial ambiguity of Judge Beaudin's order would be irrelevant—or, perhaps more accurately, the order could not be called ambiguous—because the court would not have had the power to issue an order deeming J.R.M. to have admitted paternity.

The District, however, presents a persuasive argument against this restrictive reading of the trial court's power in the circumstances present here. The District points out that the HLA test is an extremely accurate method of determining paternity. The test can prove conclusively that a man is not the father of a given child.[1] Furthermore, when the test does not exclude paternity, it usually provides evidence of fatherhood to a high statistical probability.[2] No other method exists for proving or disproving paternity with comparable accuracy. (Indeed, at least when it excludes paternity, the HLA test is a more reliable basis for adjudication than the putative father's own assertions, since the test requires no confidence in the parties' memories or assumptions about their past fidelity to one another.)

In the Parentage and Support Proceedings Reform Act of 1984, the Council of the District of Columbia amended the law governing admissibility of paternity tests to clarify that "[t]est results or expert results showing the statistical probability of the alleged parent's paternity may be admissible into evidence." D.C.Code § 16–2343.1 (1986 Supp.). Recognizing the power of the HLA test, this court has endorsed its use not only as a negative, exclusionary test but also as positive evidence that a particular man is the father of a particular child. *See L.C.D. v. District of Columbia ex rel. T.–A.H.D.*, 488 A.2d 918, 920 & n. 3 (D.C.1985); *Cutchember v. Payne*, 466 A.2d 1240 (D.C.1983). We have cautioned, however, that because a positive HLA test provides only a statistical probability that a putative father did in fact sire a particular child, "the trier of fact must realize that HLA results alone are not conclusive proof of paternity." *Id.* at 1242. Direct evidence

---

**1.** The HLA test will definitely exclude as possible fathers about 80% of a randomly chosen population, and this percentage can be increased by simultaneously administering other forms of blood test. American Medical Association & American Bar Association, *Joint AMA–ABA Guidelines: Present Status of Serologic Testing in Problems of Disputed Parentage*, 10 Fam. L.Q. 247, 257–58 & tables 2 and 3 (1976); *see also* Reisner & Bolk, *A Layman's Guide to the Use of Blood Group Analysis in Paternity Testing*, 20 J. FAM.L. 657, 672 (1981–82) (stating that "[w]ith today's exclusionary capabilities a test series in a given case should exclude at least 95% of the population" from paternity of a given child).

**2.** *See* Terasaki, *Resolution by HLA Testing of 1000 Paternity Cases Not Excluded by ABO Testing*, 16 J.Fam.L. 543 (1977–78). Terasaki recounts that in HLA tests administered in 1,000 paternity disputes in which paternity had not been excluded by other types of test, 25% of the putative fathers were definitely proved not to be the father, about 16% of the remaining putative fathers were shown to have a greater than 99% probability of being the father, 67% were shown to have a greater than 95% probability of being the father, and 86% were shown to have a greater than 90% probability of being the father. The probability of paternity is calculated as follows: the probability that the actual mother and putative father would produce a child with the same antigens as that of the child whose paternity is at issue is divided by the sum of this same probability and the probability that the mother and a *randomly* chosen man would produce a child with these antigens. *Id.* at 552.

that the parties enjoyed a sexual relationship during the period of conception remains crucial to any determination of paternity. *Id.* Still, the District argues, and we agree, that it is not only permissible to use the HLA test in paternity suits, but, at least where the petitioner makes a prima facie case and the putative father denies paternity, it is highly desirable that the court have before it the results of such a test.

Because HLA results are potentially conclusive to exclude paternity, or are statistically powerful evidence to prove paternity, the Council of the District of Columbia concluded that the trial court must have the authority to compel a reluctant party to take the test. When the Council established the admissibility of HLA results to prove paternity, it also provided that "[i]f any party refuses to submit to a test the party may be punished by contempt or by other sanctions that the court considers appropriate." D.C.Code § 16–2343.2 (1986 Supp.). This provision postdates Super.Ct. Dom.Rel.R. 405(e) and, in any event, appears to reflect an overriding concern that the courts have broad power to punish an alleged father who will not submit to a paternity test. Otherwise, given the effectiveness of HLA testing, a man who knew or suspected he was the father of a child but who wished to escape responsibility for the child's support might find that his best strategy is to refuse to take the test and thus to deprive the court of what could prove to be the decisive evidence against him.

 We conclude, therefore, that D.C. Code § 16–2343.2 (1986 Supp.), which expressly authorizes a range of sanctions, empowers the trial court, in the exercise of sound discretion, to enter a default as to the paternity of a putative father who unreasonably refuses to take the HLA test. The refusal to take a lawfully ordered HLA test deserves, potentially, a more serious sanction than does a mere failure to file an answer to a complaint alleging paternity. Thus, the facial ambiguity of Judge Beaudin's sanctions order cannot be resolved by reference to the policy against default determinations of paternity embodied in Super.Ct.Dom.Rel.R. 405(e). Remand of that order is necessary to determine whether the ultimate sanction was intended or not.

### III.

A question remains: at what point in a paternity proceeding will the trial court exercise "sound" discretion in imposing the default sanction against a putative father who refuses to undergo an HLA test?

The purpose of the paternity and support law is better served by an accurate adjudication of paternity than by a default based on the desire to punish a recalcitrant respondent. Thus, the imposition of sanctions permitted by D.C.Code § 16–2343.2 (1986 Supp.) will be most effective if used to compel an alleged father to take the HLA test and then to proceed to a trial on the merits of the paternity suit. A trial court faced with a putative father reluctant to take the HLA test, therefore, should initially seek to use the contempt power under § 16–2343.2 to effect his cooperation. A default is best reserved as a sanction of last resort.

This approach makes as consistent as possible the policies of D.C.Code § 16–2343.2 (1986 Supp.) and Super.Ct.Dom. Rel.R. 405(e), for the latter rule, while not barring entry of a default in the present situation, nonetheless reflects a policy that determinations of paternity not be entered without evidence that [4] the putative father really is the father. Moreover, "courts universally favor trial on the merits." *Gee How Oak Tin Ass'n v. Potomac Chemicals Corp.*, 110 A.2d 86, 88 (D.C.1954); *see also Grier v. Rowland*, 409 A.2d 205, 206 n. 1 (D.C.1979). Entry of a default, therefore, generally should be viewed as a last resort when other remedies for a party's errors or lack of cooperation appear unlikely to succeed or have already failed. *See LaPrade v. Lehman*, 490 A.2d 1151, 1155 (D.C.1985) (stating that before granting involuntary dismissal "the trial court 'should first resort to the wide range of lesser sanctions which it may impose'") (quoting *Garces v. Bradley*, 299 A.2d 142, 144 (D.C.1973)); *Braxton v. Howard University*, 472 A.2d

1363, 1365 (D.C.1984) (stating that "a trial court abuses its discretion if it fails to consider lesser sanctions before dismissing an action [for failure to comply with discovery orders], or if there is no " 'showing of severe circumstances" ' which would justify dismissal") (quoting *Ungar Motors v. Abdemoulaie,* 463 A.2d 686, 688–89 (D.C. 1983) (quotation omitted)).

■ Therefore, in order to promote litigation of paternity suits on the merits, including use of the evidence that HLA tests can provide to the factfinder, trial courts should press the parties to take the HLA test by using, if necessary, the contempt power before resorting to the ultimate sanction of a default determination of paternity.

### IV.

We reverse and remand the case to Judge Beaudin, in order for him to clarify the meaning of his sanctions order against J.R.M., with leave to reconsider in light of this opinion, if necessary, the appropriate sanction for J.R.M.'s refusal to take the HLA test.

*Reversed and remanded.*