**Anthony M. RACHAL, III, Appellant,**

v.

**Ara M. RACHAL, Appellee.**

**No. 81–1615.**

District of Columbia Court of Appeals.

Argued May 25, 1983.

Decided March 21, 1985.

Barry H. Gottfried, Washington, D.C., with whom John Perazich, Washington, D.C., was on brief, for appellant.

Mary Lee Garfield, Washington, D.C., for appellee.

Before MACK and TERRY, Associate Judges, and REILLY, Chief Judge, Retired.

TERRY, Associate Judge:

This is an appeal from an order granting a divorce to the wife on the ground of separation for more than one year,[1] denying the husband's claim for a limited divorce on the ground of adultery,[2] awarding custody of the parties' two children to the wife, with visitation rights to the husband, and making various dispositions of money and property. Only two issues merit discussion here: whether the court erred in dismissing, with prejudice, the husband's claim for a declaratory judgment that he was not Alan Rachal's father, and whether the award of attorney's fees to the wife was proper.

## I

Two children were born to the parties during the marriage, Alan and Anthony. At trial the issues before the court concerned the granting of a divorce, the custody of Anthony, visitation rights, distribution of property, and the award of attorney's fees and costs. Mr. Rachal did not contest his wife's *de facto* custody of Alan, and Mrs. Rachal did not seek support for Alan. There was no issue as to Alan's paternity; see note 7, *infra*. In paragraph 3 of its final order, however, the court stated:

> [It is] ORDERED, that Mr. Rachal's claim for a declaratory judgment that he is not the father of the minor child Alan Michael Rachal, having been litigated by the parties (for which Alan was not made a party) fails for lack of proof and must

---

1. *See* D.C.Code § 16–904(a)(2) (1981).

2. *See* D.C.Code § 16–904(b)(3) (1981).

be, and hereby is, DISMISSED with prejudice.

Since the question of Alan's paternity was not litigated in this proceeding, the court should not have dismissed Mr. Rachal's claim with prejudice. We therefore vacate paragraph 3 of the court's order and direct the court to dismiss the declaratory judgment claim without prejudice.

## II

■ The court awarded Mrs. Rachal $20,000 in attorney's fees and costs. In doing so, the court considered the quality of the services rendered, the skills of counsel, the result of the litigation, the difficulty of the case, and the ability of Mr. Rachal to pay attorney's fees, as well as the respective earning capacities of the parties.[3] All of these were proper factors for the court to weigh under *Ritz v. Ritz*, 197 A.2d 155, 157 (D.C.1964). In addition, however, the court expressly took into account "the respective motivations of the parties," particularly the apparent purpose of Mr. Rachal to retain *pendente lite* custody of Anthony as long as possible, so that he might ultimately prevail in his quest for permanent custody. The court also found that although it could allocate blame or fault equally between the parties before the separation, "the duration, course, and cost of the horrendous litigation between the parties [was] far more the fault of Mr. Rachal than of Mrs. Rachal." ·

■ We have repeatedly held that an award of attorney's fees is a matter committed to the sound discretion of the trial court, *e.g., Lyons v. Lyons*, 295 A.2d 903, 906 (D.C.1972), and that "it would require an extremely strong showing to convince the court that an award is so arbitrary as to constitute an abuse of discretion." *Ritz v. Ritz, supra*, 197 A.2d at 156–157. We cannot tell from the record how much weight the trial court gave to "the respec-

tive motivations of the parties" in awarding Mrs. Rachal $20,000, which is far greater than any award of attorney's fees that we have found in any reported divorce case in this jurisdiction.[4] But the very mention of motivation in this context gives us pause. An award of attorney's fees should be based on the actual services performed by the attorney in question, as *Ritz* and subsequent cases make plain. The fact that the litigation may have been burdensome or oppressive to the party requesting such fees may properly be considered by the court in deciding whether to grant the request at all, but it should not be considered in determining the amount of the award. To add to the calculus any factor such as the motivation of either party in pursuing the litigation creates the very real risk of turning an award of attorney's fees into punitive damages, which are beyond the power of a divorce court to grant. The size of the award in this case strongly suggests that this is what the court may have done.

■ If it were clear that the court gave significant weight to Mr. Rachal's motivations, whatever they may have been, then we would undoubtedly conclude that it abused its discretion. But the record is ambiguous. It shows that the trial court gave some consideration to "the respective motivations of the parties," but it does not show how important that factor was in the court's assessment. To resolve the ambiguity, we vacate paragraphs 16 and 17 of the court's order, which deal with this question, and remand the case for reconsideration of the issue of attorney's fees *de novo* within the boundaries set by *Ritz*.

■ We also note our concern over another aspect of the award of attorney's fees. Included in that award was $6,090 for services rendered in connection with a prior appeal in this case, *Rachal v. Rachal*, 412 A.2d 1202 (D.C.1980) (*Rachal I*). In

---

3. The court found that the husband's income was double that of the wife.

4. Nor can we determine how much of the $20,-000 in "attorney's fees and costs" was for attor-

ney's fees and how much was for costs. In any future award these two items should be separately calculated and separately shown in the court's order.

the District of Columbia applications for attorney's fees in divorce cases are customarily made in, and granted by, the court where the attorney's services are performed. Fees for services performed in the trial court are normally awarded by the trial court, and fees for services on appeal are normally awarded by the appellate court. Thus in this case the request for counsel fees in the prior appeal should have been presented to this court, which would be in the best position to determine the value of counsel's services in that appeal. Since the trial court has no direct knowledge of what might be an appropriate award for those services, we would ordinarily expect it to defer in such circumstances to this court, which does have such knowledge.[5]

The statute from which both courts' power to award attorney's fees is derived, D.C. Code § 16–911(a)(1) (1981), simply gives "the court" discretionary authority to order the payment of "suit money, including counsel fees...." It does not say which court, and it does not say whether one court may award fees for services performed in the other. Because Mr. Rachal has not directly challenged the propriety of the trial court's award of attorney's fees for the prior appeal, we do not now decide whether the trial court has the authority to make such an award. Nevertheless, its action here is contrary to well-established custom and practice. Since we are remanding the entire matter of attorney's fees for reconsideration, the trial court on remand should decide in the first instance whether it has the power to award attorney's fees for services performed in this court, and whether, even if it has that power, it should refrain in its discretion from exercising it.

## III

Mr. Rachal makes several other contentions, all of which are meritless. We note, however, that some of his assignments of error relate to our prior decision in *Rachal I.* Since neither party appears to understand the effect of that decision on the ensuing trial and the present appeal, we take occasion to say a few words about it now.

 *Rachal I* grew out of Mr. Rachal's assertion that Alan was not his son. Mrs. Rachal had sued for custody and support for both Alan and Anthony. After Mr. Rachal had placed Alan's paternity in issue by denying that he had any obligation to support him, the trial court ordered Mrs. Rachal to submit both herself and Alan to a human leukocyte antigen (HLA) blood test.[6] When she refused, the court held her in contempt, struck all of her pleadings, and awarded permanent custody of Anthony to Mr. Rachal, denying Mrs. Rachal any visitation rights. We summarily reversed that order, holding that the trial court had exceeded its authority in adjudicating Mrs. Rachal in contempt. In the present litigation, Alan's paternity is not at issue,[7] and thus Mrs. Rachal's failure to take the HLA test is irrelevant.[8] *Rachal I* therefore has no bearing on this appeal.

---

5. A motion for attorney's fees in any appeal would usually be referred to the division of the court which decided that appeal on the merits.

6. *See Cutchember v. Payne,* 466 A.2d 1240 (D.C. 1983).

7. The record reflects that Mr. Rachal's claim for a declaratory judgment on the issue of Alan's paternity was dismissed before trial by Judge Doyle, but that the complaint for a limited divorce on the ground of adultery was not dismissed. Toward the end of the trial before Judge Wolf, after all the evidence was in, Mr. Rachal's counsel conceded that the paternity issue was not before the court:

> A declaratory judgment is no longer an issue in this case.
> It is not one of the viable issues. Adulterous conduct is.

Proof of non-paternity may, in appropriate cases, be circumstantial evidence of adultery. In this case, however, the link between them was broken by Judge Doyle with the acquiescence of Mr. Rachal.

8. Mr. Rachal's counsel below (not his counsel on appeal) never requested the trial court to impose sanctions on Mrs. Rachal for her failure to take the HLA test, despite the court's clear invitation to do so. On this record we conclude that Mr. Rachal waived the point.

The parties are no doubt well aware that a considerable time has passed since this case was argued; in fact, this is currently the oldest case on our docket. Although the court must bear much of the burden of that delay, it is due at least in part to Mrs. Rachal's failure to file a brief. Under our rules, a party who does not file a brief may be heard on oral argument only by permission of the court. D.C.App.R. 31(c). We granted such permission in this case—reluctantly—because we felt that the issues were difficult and that oral argument would help us to resolve them. Nevertheless, the absence of a brief from one of the parties has been a substantial hindrance to us in deciding the case. We trust that this will not become a frequent, or even an occasional, practice among members of the bar.

## IV

The order from which this appeal is taken is affirmed in all respects except for paragraphs 3, 16, and 17, which are vacated. The case is remanded to the trial court for further proceedings in accordance with this opinion.

*Affirmed in part, vacated in part, and remanded.*

REILLY, Chief Judge, Retired, concurring:

In joining in Judge Terry's opinion, I should like to make an additional comment on the legal fee issue. The authority of a court to require one party in a divorce action to pay counsel fees incurred by the other spouse derives entirely from statute, as such awards are at odds with the so-called American rule, which makes each litigant in a civil action, irrespective of the outcome of the case, shoulder the burden of paying his own lawyer. *Alyeska Pipeline Service Co. v. Wilderness Society,* 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975); *see also In re Antioch University,*

482 A.2d 133 (D.C.1984), (summarizing the authorities in this jurisdiction). Hence the controlling statute, like any legislative enactment in derogation of common law, should be strictly construed.

Insofar as relevant, such statute, D.C. Code § 16–911(a)(1) provides:

During the pendency of an action for divorce, or an action by the husband or wife to declare the marriage null and void, where the nullity is denied by the other spouse, the court may:

(1) require the husband or wife to pay alimony to the other spouse for the maintenance of himself or herself and their minor children committed to such other spouse's care, and *suit money, including counsel fees, to enable such other spouse to conduct the case,* whether as the plaintiff or the defendant .... [Emphasis supplied.]

The award before us, as well as similar awards by some trial judges, reveal a misconception of that statute. Prior to recent revision, this subsection of the code authorized the courts to require a husband to provide temporary alimony and "suit money, including counsel fees to *enable* [a wife] to conduct her case."[1] At the time of its enactment, Congress undoubtedly felt that wives without independent income or other resources were at a disadvantage in divorce proceedings unless provided enough financial assistance to enable them to retain a lawyer. This did not mean of course that judges were free to charge the wife's entire legal bill to the husband in situations where the wife could afford a lawyer, either because she had money of her own when the suit began or had become somewhat self-sufficient by reason of securing alimony or a favorable division of property. In short, the words "to enable her to conduct her case" clearly implied that a husband should be charged only with such portion of the fee incurred by the wife

---

**1.** *See* D.C.Code § 16–911 (1973).

as was needed to provide her with legal representation.

Recognition of such statutory intent caused this court, in awarding counsel fees for appellate services furnished by the financially disadvantaged spouse, to fix relatively small amounts.[2] Our premise was that it was not our function to pass on the reasonableness of the claimed fee, but to charge only such portion thereof to the husband as was necessary to enable the wife to present her position.

The recent revision of this subsection of the code by the City Council, placing the sexes on an even footing, did not change this basic concept, as the critical words "to enable ... to conduct the case" were retained. Thus, in the case before us, the fact that the husband's income was almost twice that of the wife was no reason for holding him liable for all the fees claimed by wife's counsel. We note that when the case was heard in the trial court, the wife was earning a substantial salary, and that when it was over, she had won a generous division of the husband's real estate equity.

So far as the award of a fee is concerned, covering in whole or in part appellate services performed in this court by the same lawyer, we are not aware of any decision construing § 16–911 which contemplates the exercise of such authority by a trial court. In *Gullo v. Hirst*, 207 A.2d 662 (D.C.1965), where we regarded multiple litigation pursued by a husband as an abuse of process, we ordered him to pay a combined fee of $1,000 for legal services in appellate and trial courts, but expressly stated, *id.* at 264, that ordinarily "we would leave the question of counsel fees for services in the trial court to that court for determination." There is nothing in that opinion which even remotely suggests that the award of counsel fees for services on appeal is something upon which a trial court should pass.

**2.** *See Thunberg v. Thunberg,* 283 A.2d 444 (D.C. 1971); *Majette v. Majette,* 261 A.2d 824 (D.C. 1970); *Payton v. Payton,* 187 A.2d 899 (D.C. 1963).