PRIDE TRANSPORT, INC.,
Appellant/Cross–
Appellee,

v.

NORTHEASTERN PENNSYLVANIA SHIPPERS COOPERATIVE AS-SOCIATION, INC., Appellee,

and

Ronald N. COBERT, Appellee/Cross–
Appellant.

Nos. 02–CV–169, 02–CV–207.

District of Columbia Court of Appeals.

Argued April 15, 2003.
Decided Sept. 25, 2003.

---

Roger A. Colaizzi, Washington, DC, with whom Theodore W. Atkinson, was on the brief, for appellant/cross-appellee.

Andrew M. Danas, Washington, DC, with whom Ronald N. Cobert, was on the brief, for appellee/cross-appellant.

Before STEADMAN and RUIZ, Associate Judges, and KING, Senior Judge.

KING, Senior Judge:

Pride Transport, Inc., appeals, contending that the trial court erred in denying its motion for entry of a show-cause order and quashing its writ of attachment; the appellee in that appeal, Ronald N. Cobert, an attorney in Washington, D.C., cross-appeals, contending that the trial court erred in denying his request for costs and attorney's fees pursuant to D.C.Code § 16–553 (2001).[1] Cobert also moves this court to award attorney's fees incurred in this appeal. We affirm all of the trial court's

---

1. As we have noted before, the expression "attorneys' fees" presents "the case of the migrant apostrophe. The proper location of the apostrophe in the term 'attorney['][s]['] fee[s]' (and even whether it should be included at all) is a matter of heated controversy." *Synanon Foundation, Inc. v. Bernstein,* 517 A.2d 28, 30 (D.C.1986). Noting the widely varied usage in the possessive case, here we use the singular-possessive "attorney's," the statutory term that governs. *See* D.C.Code § 16–553 ("[T]he plaintiff shall be adjudged to pay to garnishee … a reasonable attorney's fee."); *see also Alexander v. District of Columbia Rental Housing Com.,* 542 A.2d 359, 359 n. 1 (1988). Quoted language, however, will remain as it is found in its original.

rulings and deny Cobert's motion for attorney's fees in this court.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This appeal arises out of Pride Transport's attempts to collect on a judgment debt. Pride Transport was the judgment creditor, and Cobert was counsel to the judgment debtor in a case unrelated to the judgment debt case. The judgment debtor did not participate in this appeal.

### A. Facts

In 1997, Pride Transport filed a civil action against the Northeastern Pennsylvania Shippers Cooperative Association, Inc. ("NEPSCA"), in the Superior Court of the State of New Jersey.[2] The parties settled, but NEPSCA defaulted under the settlement agreement, and a default judgment was entered in favor of Pride Transport on March 7, 1997, for $20,491.88.

On July 24, 1991, NEPSCA filed an action against the United States in the United States Court of Federal Claims in an unrelated matter. *Northeastern Pa. Shippers Coop. Ass'n v. United States*, 32 Fed. Cl. 72 (1994). Cobert represented NEPSCA in that action. He undertook that representation after arriving at an agreement with Fidelity Bank ("Fidelity"), who was a superior creditor with a U.C.C. lien against NEPSCA's receivables that had been filed in Pennsylvania. The agreement provided that Fidelity would acknowledge and honor Cobert's attorney's lien for his contingent fee for representing NEPSCA in the action in the Court of Federal Claims. In that case, the trial court ruled against the United States and awarded NEPSCA $55,745.00 in damages. *Northeastern Pa. Shippers Coop. Ass'n v. United States*, 43 Fed. Cl. 763 (1999).

That decision was filed on June 10, 1999. *Id.* NEPSCA then filed a timely appeal to the United States Court of Appeals for the Federal Circuit.

In the meantime, Pride Transport domesticated its New Jersey judgment in the District on July 1, 1999. On August 4, 1999, Pride Transport served upon Cobert a writ of attachment and interrogatories, pursuant to D.C.Code § 16–553 (2001). The relevant interrogatory read as follows:

Had you *at the time of the service of the annexed writ of attachment, or have you between the time of such service and the filing of your answer to this interrogatory,* any goods, chattels, or credits of the defendant(s) in your possession or charge, and, if so, what?

(Emphasis added). Cobert responded in a timely fashion (August 9, 1999) with the following:

No. However, the law firm of Grove, Jaskiewicz and Cobert does have a lawyers' lien against the judgment [in NEPSCA's action against the United States]. In addition, one or more banks and other creditors have existing liens, based upon information and belief.

Pride Transport did nothing further.

On August 11, 2000, the United States Court of Appeals for the Federal Circuit affirmed in NEPSCA's action against the United States. *Northeastern Pa. Shippers Coop. Ass'n v. United States*, 243 F.3d 556 (Fed.Cir.2000). In a letter dated October 27, 2000, Fidelity memorialized an earlier agreement between it and Cobert whereby Cobert would forward the check that the Treasury Department ("Treasury") would issue, once received, to Fidelity, who would then arrange for the authorized agents of NEPSCA (to whom the check was required to be made payable) to endorse the instrument over to Fidelity. Fidelity

---

**2.** Cobert did not represent NEPSCA in those    proceedings.

would then "forward the amount due to [Cobert's] firm."[3]

On March 21, 2001, the Justice Department issued to Treasury the requisite letter certifying the validity and finality of the judgment against the United States, and on May 3, 2001, Treasury issued a check made payable to "NORTHEASTERN PA SHIPPERS COOPERATIVE ASS'N INC C/O RONALD N COBERT, ET AL" in the amount of $55,745, the amount of the judgment. Upon receipt of the check, Cobert forwarded it to Fidelity, pursuant to the agreement between them. Fidelity then remitted $30,745 to Cobert for attorney's fees in the *NEPSCA v. United States* litigation.

### B. *Procedural Background*

On October 26, 2001, Pride Transport filed, in the writ of attachment action in the Superior Court, a motion for entry of an order to show cause. Pride Transport asked the court to adjudge Cobert in contempt if Cobert did not show cause for "paying or surrendering money and/or property of [NEPSCA] in violation of a Writ of Attachment issued by [the Superior] Court on July 30, 1999." Pride Transport argued in support of its motion that the lien created by service upon Cobert of the writ of attachment embraced the future-acquired check and created a lien on it, and that, if Cobert wished to assert a claim in the check, his remedy was by resort to D.C.Code § 16–551 (2001), which allows a garnishee to make claim to attached property by filing with the Superior Court an answer defending against the attachment. Alternatively, Pride Transport argued that Cobert should have filed a motion to quash the writ.

Cobert cross-moved to quash Pride Transport's writ of attachment and to award costs and attorney's fees. In support of his motion, Cobert argued, in the alternative, that (1) no lien was ever perfected, and the writ was dismissed in September 1999; (2) even if a lien were perfected, it would not have applied to after-acquired property, such as the check issued by the United States government; (3) negotiable instruments, such as the government's check, are not attachable; (4) even if a lien were perfected, it would not have applied to unliquidated or contingent liabilities; and (5) even if a lien were perfected, the lien could not have superseded preexisting, superior liens.[4] In support of Cobert's motion for attorney's fees and costs, he mentioned Super. Ct. Civ. R. 11 in passing, but argued that D.C.Code §§ 16–553, –522 require that attorney's fees and costs be awarded. On January 10, 2002, without elaboration, the trial court denied Pride Transport's motion for entry of a show-cause order and Cobert's motion for attorney's fees and costs, and granted Cobert's motion to quash.[5] These appeals followed.

## II. DISCUSSION

Pride Transport argues that the trial court erred in denying its motion for entry

---

3.  If NEPSCA failed to negotiate the instrument to Fidelity, Fidelity would return it unendorsed to Cobert.

4.  In Cobert's memorandum in support of his motion before the trial court, he states that "[t]here are four (4) reasons why the [p]laintiff's motion to show cause must be quashed and denied . . . ." However, he identified five reasons in his discussion.

5.  On December 10, 2001, Pride Transport had also filed a motion for leave to file a response to Cobert's opposition to Pride Transport's initial show-cause motion. That motion was also denied by the trial court on January 10, 2002.

of a show-cause order against Cobert and granting Cobert's motion to quash, and Cobert contends that the trial court erred in denying his motion for attorney's fees and costs. Cobert further moves this court to award attorney's fees on appeal pursuant to D.C.App. R. 38. We reject the contentions by both parties, and affirm the rulings of the trial court and deny Cobert's request for attorney's fees incurred incident to this appeal.

### A. Motion to Show Cause

■ We review a trial court's denial of a motion to show cause for abuse of discretion. *See Wrecking Corp. of America, Virginia, Inc. v. Jersey Welding Supply, Inc.,* 463 A.2d 678, 680 (D.C.1983). In arguing that the trial court erred, Pride Transport claims that (1) a judgment from a trial court that has been appealed (here the judgment of the Federal Court of Claims on appeal to the U.S. Court of Appeals for the Federal Circuit) is attachable as a sum certain and that payments made in satisfaction of that judgment were subject to the lien created by the writ of attachment; (2) Super. Ct. Civ. R. 69–I did not extinguish the writ by operation of law because it did not apply; and (3) the existence and priority of liens was for the trial court to determine in the first instance, not Cobert. Cobert responds by renewing his arguments before the trial court. Specifically, he contends alternatively that (1) no lien was perfected, and the writ was dismissed in September 1999 pursuant to Super. Ct. Civ. R. 69–I; (2) even if a lien were perfected, it would not have applied to after-acquired property, such as the present check; (3) negotiable instruments, such as the government's check, are not attachable; (4) even if a lien were perfected, it would not have applied to unliquidated or contingent liabilities, such as a judgment on appeal; and (5) even if a lien were

perfected, the lien could not have superseded preexisting, superior liens.

■ We begin by noting that Cobert's first argument is actually a conflation of two distinct arguments: (1) no lien was perfected, and (2) the writ of attachment was dismissed by operation of law. Because we agree with Cobert that Super. Ct. Civ. R. 69–I operated to dismiss the writ, we need not address either the general contention that no lien was perfected or the other specific contentions asserted here and in the trial court. We conclude that the writ was effectively dismissed in September 1999. Therefore, the trial court did not err in granting Cobert's motion to quash.

Super. Ct. Civ. R. 69–I(e), provides in relevant part:

> No judgment against a garnishee under D.C.Code [ ] §§ 16–556 ... shall be entered except by order of Court. Applications for a judgment shall be filed (1) ..., or (2) as to property other than "wages" as defined in D.C.Code [ ] § 16–571, *within 4 weeks after the garnishee has filed answers to the interrogatories*[,] or (3) ..., or (4) within such later time as may be authorized by the Court upon a motion made within the applicable period. *If no judgment of condemnation or of recovery has been applied for or entered within the time provided by this Rule, the garnishment and attachment shall stand dismissed.*

(Emphasis added.) It is uncontroverted that the twenty-eight day period lapsed long before Pride Transport filed its show-cause motion with the trial court. Cobert filed his answers to Pride Transport's interrogatories on August 9, 1999, and Pride Transport filed its show-cause motion on October 26, 2001—more than two years later. Applying Rule 69–I, we conclude, because no judgment was applied for or entered within the specified time period,

the "garnishment and attachment ... stand[s] dismissed" by operation of law.

Pride Transport contends, however, that Rule 69–I governs only when a judgment is entered pursuant to D.C.Code § 16–556. The relevant portion of Section 16–556 provides:

> Subject to the provisions of subchapter III of this chapter, if a garnishee has admitted credits in his hands, in answer to interrogatories served upon him, or the credits have been found upon an issue made as provided by this chapter, judgment shall be entered against him for the amount of credits admitted or found, not exceeding the amount of the plaintiff's judgment, and costs, and execution shall be had thereon not to exceed the credits in his hands. When the credits are not immediately due and payable, execution shall be stayed until they become due.

D.C.Code § 16–556(a) (2001). Pride Transport argues that, under the circumstances, no judgment could have been entered under this provision. Assuming, without deciding, that Pride Transport is correct in that assertion, we do not agree that because no judgment could have been entered, the provisions of Rule 69–I(e) relating to dismissal of the garnishment and attachment do not apply. We know of no authority to support that claim and Pride Transport has cited none. As we said above, because no judgment was applied for or entered within the specified time period, the "garnishment and attachment shall stand dismissed."

Finally, Pride Transport also contends that Rule 69–I does not apply, under our holding in *Household Fin. Corp. v. Training Research and Dev., Inc.*, 316 A.2d 850 (D.C.1973). We disagree. In *Household Finance*, we dealt with a situation markedly different than the one now before us. There, in addition to Section 16–556, we considered Section 16–575, which explicitly provided:

> If the employer-garnishee fails to pay to the judgment creditor the percentages prescribed in this subchapter of the wages which become payable to the judgment debtor for any pay period, judgment shall be entered against him for an amount equal to the percentages with respect to which the failure occurs.

D.C.Code § 16–575 (1973). Observing a direct conflict between the statutory language there and that of Rule 69–I, we held that the statute superseded the rule. Here, there is no such conflict, and we decline to extend the reasoning in *Household Finance* beyond its application there. Cobert was therefore within his right to release the judgment check.[6]

### B. *Motion for Attorney's Fees and Costs*

We now turn to the trial court's denial of Cobert's motion for attorney's fees and costs,[7] filed pursuant to D.C.Code

---

**6.** In addition to the statutory conflict present in *Household Finance*, which is absent in the instant case, we there dealt with periodic garnishment of a portion of an employee's biweekly net wages—a situation significantly different than a lump-sum judgment award—a situation that very likely would exceed in time the twenty-eight-day period contemplated by Rule 69–I.

**7.** The award of costs is ordinarily governed by Super. Ct. Civ. R. 54(d)(1) ("Except when express provision therefor is made either in an applicable statute or in these Rules, costs other than attorneys' fees shall be allowed as of course to the prevailing party unless the Court otherwise directs."). "*Whether* to award costs is committed to the trial court's discretion, and, upon review, it is not for the appellate court to substitute its discretion for that of the trial court." *Hardi v. Mezzanotte*, 818 A.2d 974, 986 (D.C.2003) (emphasis added; citations omitted). Cobert, however, did not seek costs in the trial court pursuant to

§ 16–553 (2001). Because this is a question of law, our standard of review is *de novo*. *Heard v. Johnson*, 810 A.2d 871, 878 (D.C.2002). The statute in question provides as follows:

> If a garnishee answers to interrogatories that he does not have property or credits of the defendant, or has less than the amount of the plaintiff's judgment, the plaintiff may traverse the answer as to the existence or amount of the property or credits, *and the issue thereby made may be tried as provided by section 16–551. In such a case, where judgment is rendered for the garnishee,* the plaintiff shall be adjudged to pay to the garnishee, in addition to the taxed costs, a reasonable attorney's fee. If the issue is found for the plaintiff, judgment shall be rendered for him in accordance with the finding.

D.C.Code § 16–553 (emphasis added). Thus, attorney's fees and costs are available under this provision only where the garnisher traverses the garnishee's answer and a judgment is entered for the garnishee. Cobert argues that Pride Transport's show-cause motion amounted to a *de facto* traverse. We do not agree. A traverse is the statutory challenge to the accuracy and/or veracity of a garnishee's answers to interrogatories that accompany writs of attachment. *See* § 16–553 ("If a garnishee answers to interrogatories ..., the plaintiff may traverse the answer as to the existence or amount of the property or credits [in garnishee's hands], and the issue thereby made may be tried as provided by section 16–551."). Pride Transport's motion, however, did not constitute a challenge to the veracity or accuracy of Cobert's answers to interrogatories. Therefore, because there was no traverse followed by a favorable judgment for the garnishee, attorney's fees and costs are not authorized under the statute.[8]

## III. CONCLUSION

We conclude that the trial court did not err in quashing Pride Transport's show-cause motion and denying Cobert's cross-motion for attorney's fees and costs. Further, we conclude that the issues and arguments before us are not frivolous. Accordingly, we affirm the trial court's rulings and deny Cobert's motion for attorney's fees on appeal.

*Affirmed.*

---

Rule 54. Nor does he claim before us that the trial court abused discretion in not awarding costs under that rule. Therefore, we only consider whether he was entitled to costs—as well as attorney's fees—pursuant to D.C.Code § 16–553.

8. Cobert also seeks an award for attorney's fees incurred appeal pursuant to D.C.App. R. 38, which provides: "If this court shall determine that an appeal is frivolous, it may award just damages and single or double costs to the appellee." "A frivolous appeal has variously been described by this court as one that is wholly lacking in substance, an appeal not based upon even a faint hope of success on the legal merits of the appeal, or an appeal utterly without merit." *Slater v. Biehl*, 793 A.2d 1268, 1278 (D.C.2002) (footnote and internal punctuation and citations omitted). This appeal does not rise to that level, particularly in light of the fact that the trial court did not explain the reasons for its disposition of the motion before it.