**Marjorie SUDDERTH, Appellant,**

v.

**William H. SUDDERTH III, Appellee.**

No. 08–FM–731.

District of Columbia Court of Appeals.

Argued June 23, 2009.

Decided Dec. 17, 2009.

Nelson A. Garcia, Chevy Chase, MD, for appellant.

Armin U. Kuder, with whom Michelle L. Locey was on the brief, Washington, for appellee.

Before WASHINGTON, Judge, GLICKMAN, Associate Judge, and PRYOR, Senior Judge.

WASHINGTON, Chief Judge:

This appeal is taken from a trial court judgment of final divorce between appellant, Marjorie A. Sudderth and appellee, William H. Sudderth, III. Mrs. Sudderth is displeased with the trial court's distribution of certain real properties that the parties acquired during their marriage and also challenges the trial court's award to Mr. Sudderth of attorney's fees for defending against Mrs. Sudderth's original attempt to prosecute this divorce action in Nevada. Finding error only with respect to the award of attorney's fees, we affirm in part and reverse in part.

## I.

Appellant Marjorie Ann Harris and appellee William H. Sudderth, III were married on October 31, 1985, in Arlington, Virginia. The marriage lasted for approximately nineteen years until the couple legally separated on May 24, 2006. The couple has no children.

During the marriage, Mrs. Sudderth, a licensed attorney, worked at a major law firm as a legal secretary while Mr. Sudderth, who during the 1980s and 1990s was a fairly successful musician and who later obtained some computer training, spent the vast majority of his time renovating and managing the real properties that the couple purchased during their marriage. Mr. Sudderth also was primarily responsible for caring for the marital home.

Because Mr. Sudderth did not receive compensation for the work he did managing the family real estate holdings or for caring for the marital home, it was Mrs. Sudderth's salary that paid for most of the couple's expenses during their marriage, including paying the mortgages on the parties' four real properties. However, when Mr. Sudderth inherited $110,000 in 2002, he helped pay some of the couple's expenses, and he used part of that money to help purchase the couple's property located on Pineview Court in the District ("the Pineview Court property") in Northeast, and to purchase individual retirement accounts for both him and his wife.

The Pineview Court property, valued at $192,333, was held by the couple as tenants by the entirety. An outstanding mortgage on the Pineview Court property for $117,597 reduced the marital interest in the property to $74,736.

In addition to the Pineview Court property, the parties acquired three other real estate properties during their marriage, all of which are located in the District.[1] The parties acquired property on I Street in Southeast ("the I Street property") in 1988, where they lived for some period of

---

1. The trial court found all four real properties to be marital property pursuant to D.C.Code § 16–910(b) (2001), which neither party disputes.

time while Mr. Sudderth extensively renovated it and which is valued at $514,000 although encumbered by a $121,456.25 mortgage for which both parties are jointly liable. Ultimately, the parties used the I Street property as rental investment property.

In 1997, the parties used equity from the I Street property to acquire property on G Street in Northeast ("the G Street property"), which they held jointly as tenants by the entirety. Valued at $553,572, the G Street property is encumbered by two mortgages, held solely in Mrs. Sudderth's name, for $98,543 and $24,512, respectively. This property served as the parties' marital home until they physically separated in 2006.

During the marriage, the parties also acquired property on 38th Street in Southeast ("the 38th Street property"), which was titled and carried a mortgage in Mrs. Sudderth's name alone. This property, valued between $164,000 and $183,000, was encumbered by two mortgages totaling approximately $152,000.

As part of the judgment of absolute divorce, the trial court awarded Mrs. Sudderth the G Street property and the 38th Street property and awarded Mr. Sudderth the Pineview Court property, the I Street property, and one-half of Mrs. Sudderth's retirement accounts (totaling $12,512). In making its award to Mr. Sudderth, the trial court indicated that the award was in part in lieu of alimony. Also, the trial court awarded Mr. Sudderth $1800 for attorney's fees he incurred in defending against a Nevada divorce action brought and subsequently dismissed by Mrs. Sudderth prior to the divorce action instituted by Mr. Sudderth in the Superior Court.

## II.

Mrs. Sudderth raises several issues on appeal, but her primary contention is that the trial court erred in its distribution of the real properties obtained during the marriage. Specifically, she contends that the trial court erred by granting Mr. Sudderth marital property in lieu of awarding alimony, and that because the trial court improperly presumed that there should be an equal distribution of the marital property, it failed to give proper weight to the parties' respective contributions to the acquisition of that marital property.[2]

## A.

Mrs. Sudderth's claim that the trial court erred in distributing marital proper-

2. Mrs. Sudderth notes in her argument that the trial court erred in its findings of fact by finding that she testified to consulting with her paramour, and the couple's attorney, Mr. Joseph Lopes, about purchasing the 38th Street property and preventing Mr. Sudderth from claiming any interest in the property. While Mrs. Sudderth did testify to consulting with Mr. Lopes on many matters, such as financial statements, disbursements from the marital property, taxes and traveling to Nevada where she instituted a divorce action against Mr. Sudderth, the record does not indicate that she explicitly testified as the trial court articulated. This finding was erroneous; however, we are satisfied that it was of no consequence to the trial court's final judg-

ment and it did not influence the weighing of the enumerated factors for the equitable distribution of marital property or the determination of whether to award alimony. Therefore, because the trial court's findings of fact, conclusions of law and judgment "taken together ... present an integrated, internally consistent and readily understood whole," *Young–Jones v. Bell*, 905 A.2d 275, 277 (D.C. 2006), which is unaffected by the erroneous finding, we will not disturb the trial court's judgment, *but see Mizrachi v. Mizrachi*, 683 A.2d 137 (D.C.1996) (reversing where erroneous factual findings regarding husband's unemployment served as the basis for the trial court's ultimate judgment in alimony and child support action).

ty in lieu of alimony is based in part on her contention that such an award is improper unless the trial court first determines the exact dollar amount of any alimony owed. However, nowhere in the record does it appear that Mrs. Sudderth requested that the trial court make a specific dollar determination. And while we understand Mrs. Sudderth's argument, under the D.C.Code and our case law, it is within the trial court's discretion to award marital property in lieu of alimony. Moreover, we are unaware of any restraints on the trial court's ability to award marital property in lieu of alimony. In fact, we have found it not to be an abuse of discretion when a trial court denies a request for alimony and yet awards marital property, including a valuable home and a one year old car, "in lieu of alimony." *See Weiner v. Weiner,* 605 A.2d 18 (D.C.1992). Thus, we see no reason to disturb the trial court's order in this regard merely because the trial court did not specify an amount of alimony against which the distribution of property in lieu of alimony could be measured.

 Mrs. Sudderth further argues that even if it was not an abuse of discretion for the trial court to award some of the marital property in lieu of alimony without specifying an exact dollar amount of the alimony owed, the trial court abused its discretion here by finding that Mr. Sudderth was entitled to receive any alimony. Mrs. Sudderth concludes that no alimony should have been awarded to Mr. Sudderth because the parties had a low standard of living, Mr. Sudderth is educated with marketable skills and Mrs. Sudderth has substantial debt. However, "[t]he objective of alimony is to provide a reasonable and necessary support." *Lake v. Lake,* 756 A.2d 917, 921 (D.C.2000) (citing *McEachnie v. McEachnie,* 216 A.2d 169, 170 (D.C.1966)). While "[t]here is no fixed set of rules or formulae for determining permanent alimony," we will not reverse an alimony award so long as the trial court made a fair and equitable award after considering the particular facts of the case in light of all relevant factors, including those delineated in the Code.[3] *McEachnie, supra,* 216 A.2d at 170; *accord* D.C.Code § 16–913(d) (outlining nine factors for the court to consider in determining whether to award alimony); *see, e.g.,*

---

**3.** The pertinent part of the D.C.Code § 16–913(d) reads:

In making an award of alimony, the Court shall consider all the relevant factors necessary for a fair and equitable award, including, but not limited to, the:

(1) ability of the party seeking alimony to be wholly or partly selfsupporting;

(2) time necessary for the party seeking alimony to gain sufficient education or training to enable that party to secure suitable employment;

(3) standard of living that the parties established during their marriage or domestic partnership, but giving consideration to the fact that there will be 2 households to maintain;

(4) duration of the marriage or domestic partnership;

(5) circumstances which contributed to the estrangement of the parties;

(6) age of each party;

(7) physical and mental condition of each party;

(8) ability of the party from whom alimony is sought to meet his or her needs while meeting the needs of the other party; and

(9) financial needs and financial resources of each party, including:

(A) income;

(B) income from assets, both those that are the property of the marriage or domestic partnership and those that are not;

(C) potential income which may be imputed to non-income producing assets of a party;

(D) any previous award of child support in this case;

(E) the financial obligations of each party;

(F) the right of a party to receive retirement benefits; and

(G) the taxability or non-taxability of income.

*Butler v. Butler* 239 A.2d 616, 619–20 (D.C. 1968) (affirming the trial court's determination of alimony amount even though we believed it to be "generous" because the relevant factors were applied).

Here, the evidence adduced at trial supports the trial court's conclusion that the parties maintained a moderate standard of living as opposed to the low standard of living claimed by Mrs. Sudderth. Neither party disputes that they were able to purchase four properties in the District of Columbia, renovate the properties, and rent several of them to others. Also, Mrs. Sudderth testified that she was able to afford two elective cosmetic surgeries for herself during the marriage. Consequently, the evidence preserved at trial supports the trial court's conclusion that the parties enjoyed a moderate standard of living.

Further, as the trial court recognized, the evidence also established that, while Mr. Sudderth had no individual debts, he had no income or savings. He was homeless, taking loans from family members to survive, and his education did not exceed high school and some computer training. By contrast, the trial court found that while Mrs. Sudderth had accumulated individual debt from student loans and credit cards, she had earned a law degree, she maintained a well-paying job at a major law firm, and she had several retirement accounts containing significant amounts of money. Based on this evidence, and the evidence relevant to the other enumerated factors considered by the trial court in the alimony determination, we cannot say that the trial court abused its discretion when it awarded marital property in lieu of alimony to Mr. Sudderth.

### B.

■ Mrs. Sudderth next attacks the trial court's framework for its distribution of the marital property by insisting that the trial court began its analysis with an improper presumption of *equal* distribution instead of the required presumption of *equitable* distribution. D.C.Code § 16–910(b) (mandating trial court make an "equitable, just and reasonable" distribution of marital property after considering non-exclusive list of enumerated factors); *see Burwell v. Burwell,* 700 A.2d 219, 223 (D.C.1997) (the court must divide marital property equitably, in a manner that is "just and reasonable"). Specifically, Mrs. Sudderth argues that, in an in-court discussion between the trial court and Mr. Sudderth's counsel, it was suggested that the trial court distribute the properties equally and the trial judge said "right." We believe that counsel reads too much into the judge's remark. From the record, it is clear that the trial judge was merely acknowledging that he understood the merits of counsel's argument rather than affirming, or subscribing to, the merits of counsel's contention. Moreover, prior to distributing the marital property, the trial court expressly cited to the key statute and stated in its judgment that "[p]ursuant to D.C.Code § 16–910(b), [it] must 'value and distribute all other property and debt accumulated during the marriage' and make an equitable distribution of that property considering all relevant factors, including the following statutory factors." Accordingly, the record does not show that the trial court's framework for distribution of the marital property was anything other than equitable.

■ Finally, turning to the actual distribution of the marital property, Mrs. Sudderth argues that the trial court failed to properly weigh several of the relevant factors enumerated in D.C.Code 16–910(b). By statutory mandate, "[t]he trial court must engage in a conscientious weighing of all relevant factors, statutory or otherwise, before reaching a conclusion about the

**1268**

proper distribution of the property." *Young–Jones, supra,* 905 A.2d at 277 (internal citations omitted). We will not disturb the judgment distributing marital property, if the trial court's findings of fact, conclusions of law and judgment, "taken together present an integrated, internally consistent and readily understood whole." *Id.* (internal citations omitted).

■ Turning to the factor regarding "each party's increase or decrease in income as a result of the marriage," Mrs. Sudderth argues that the trial court erroneously concluded that the parties had jointly decided that Mr. Sudderth would give up his music career for the marriage. *See* § 16–910(b)(9). While Mrs. Sudderth may assert that there was no agreement to this effect, there was sufficient evidence in the record to support the trial court's conclusion to the contrary. Mainly, Mr. Sudderth testified to the parties' agreement that he find more stable employment after they married, and the trial court credited Mr. Sudderth's testimony on the matter. Thus, because there is support in the record for the trial court's conclusion, we will not disturb it. *See, e.g., Barnes v. Sherman,* 758 A.2d 936, 941–42 (D.C.2000) ("[T]he trial court, as the arbiter of the credibility of witnesses," did not abuse its discretion by refusing to credit wife's testimony on the value of the parties' newspaper business.); *Meredith v. Meredith,* 614 A.2d 920 (D.C.1992) (affirming the trial court's decision not to credit the wife's testimony, and its conclusion that she was unemployed at the time of the divorce, where there was sufficient evidence contrary to the wife's claim to support the trial court's conclusion).

■ Mrs. Sudderth further argues that the trial court gave too much weight to Mr. Sudderth's renovations and contributions to the four properties and failed to give proper weight to Mrs. Sudderth's con-

tributions to the acquisition of the properties. Based on the evidence, we are satisfied that, despite Mrs. Sudderth's claims, the trial court gave meaningful consideration "to each party's contributions to the acquisition, preservation, appreciation, dissipation, or depreciation in value" of the four properties. *See* § 16–910(b)(10).

In its judgment, the trial court expressly acknowledged Mrs. Sudderth's contributions as the "primary breadwinner" as it noted that, during the marriage, she paid all the mortgages, taxes, insurance, and utilities on all four properties while Mr. Sudderth was unemployed. But the trial court also took note of the fact that, while Mr. Sudderth may have experienced substantial periods of unemployment, he renovated the properties and tended to the marital home. Mrs. Sudderth herself testifies to Mr. Sudderth doing the grocery shopping, driving her to work, performing repair work and installations on the properties, and contributing his paychecks to their joint account. And even if Mrs. Sudderth testified that Mr. Sudderth's handiwork was "terrible," the trial court was free to credit the testimony of Mr. Joe Mack and Ms. Teresa Diakhate, both of whom were close to the parties' and described Mr. Sudderth's repair work as "excellent" or "exceptional." Also, based on Mr. Sudderth's testimony and detailed record of his expenditures, there was substantial evidence supporting the trial court's conclusion that Mr. Sudderth contributed "a lion's share" of his $110,000 inheritance to the parties' family expenses, including money toward acquiring the Pineview Court property. Thus, there was sufficient evidence to support the trial court's conclusion here.

■ Lastly, Mrs. Sudderth argues that the trial court failed to consider the civil protection orders ("CPO") she secured against Mr. Sudderth and his CPO viola-

tion, when it assessed "the circumstances which contributed to the estrangement of the parties." *See* § 16–910(b)(12). The trial court recognized that, although the parties had "two very different explanations regarding the breakdown of their marital relationship," the corrosive effect created by Mrs. Sudderth's long-time extramarital affair with the parties' attorney, family friend and business partner, was the "primary factor" that led to the parties' estrangement.[4] We are satisfied that there was sufficient evidence in the record to support this conclusion based on the testimony of Mr. Sudderth, Ms. Diakhate, and Mr. Mack regarding the deterioration of the parties' marital bond upon Mr. Sudderth's discovery of the affair, and the evidence that the CPOs stemmed from his behavior in response to discovering the affair.

For the foregoing reasons, we are not persuaded to disturb the trial court's distribution of the marital property.

### C.

■ Unrelated to the distribution of marital property, Mrs. Sudderth disputes the trial court's $1800 award of attorney's fees to Mr. Sudderth for the costs he incurred in defending the Nevada divorce action Mrs. Sudderth brought and subsequently withdrew. Mrs. Sudderth asserts that the trial court lacked authority to award the fees since the services were not rendered in an action brought before the Superior Court, but before the Nevada courts, which is beyond the trial court's jurisdiction.

■ When reviewing an award for attorney's fees in a divorce action, generally "our scope of review is a limited one because disposition of such motions is firmly committed to the informed discretion of the trial court." *Steadman v. Steadman,* 514 A.2d 1196, 1200 (D.C.1986); *accord Darling v. Darling,* 444 A.2d 20, 23 (D.C. 1982) (finding no abuse of discretion in trial court's award of attorney's fees to wife). However, where there is a challenge to whether the trial court was authorized to award the fees, we review the matter *de novo* as it is a question of law. *See, e.g., Pride Transport, Inc. v. Northeastern Pa. Shippers Co-op. Ass'n Inc.,* 832 A.2d 163, 168–69 (D.C.2003) (reviewing whether statute authorized trial court to award attorney's fees *de novo* ); *District of Columbia v. Jerry M.,* 717 A.2d 866, 868 (D.C.1998) (reviewing *de novo* issue of whether statute limited amount of attorney fees award).

■ In awarding Mr. Sudderth attorney's fees, the trial court did not articulate the statute or authority upon which the award rested. "In the absence of statutory or rule authority, attorney's fees generally are not allowed as an element of damages, costs, or otherwise." *Delacruz v. Harris,* 780 A.2d 262, 264 (D.C.2001) (quoting *Roos v. LaPrade,* 444 A.2d 950, 951 (D.C.1982)); *accord Steadman,* 514 A.2d at 1200 n. 4. Mr. Sudderth, however, contends that the trial court's authority stemmed from D.C.Code § 16–911(a)(1) and further asserts that he petitioned the trial court to award fees based on § 16–911.[5]

---

4. Although the trial court did not mention the CPOs under this factor, it noted them in the background discussion of the judgment.

5. In her brief, Mrs. Sudderth bases her challenge to the attorney's fee award on language in *Rachal v. Rachal,* 489 A.2d 476 (D.C.1985), where we state that "an award of attorney's fees is to be determined by the court in which the services were performed." *Rachal, supra,* 489 A.2d at 479. *Rachal,* however, does not support this proposition in the context Mrs. Sudderth offers it for.

Pursuant to D.C.Code § 16–911(a)(1), "during the pendency of an action for divorce … the court may … require the spouse or domestic partner to pay suit money, including counsel fees, to enable such other spouse to conduct the case." This statutory grant of authority to the trial court "is designed to ensure that a party in a divorce action not be hindered unfairly in maintaining the action by unequal burdens between the spouses." *Tydings v. Tydings*, 567 A.2d 886, 890 (D.C.1989) (internal citation omitted). Accordingly, as expressly articulated in the statute, the trial court's authority to grant attorney's fees is temporally limited in scope to "*during* the pendency of the action for divorce*" and is purposefully limited to enabling the spouse to conduct litigation in the divorce proceedings. Section 16–911(a)(1) (emphasis added); *accord Tydings, supra,* 567 A.2d at 891 at n. 5 (statutory grant of attorney's fees is to "enable a spouse to conduct litigation"). Hence, the trial court's authority under this statute cannot be said to extend to attorney's fees incurred in separate actions or in actions instituted prior to the divorce action or in post-divorce efforts. *See Fullard v. Fullard,* 614 A.2d 515, 517–18 (D.C. 1992) (indicating that § 16–911(a)(1) would not support wife's counsel fees incurred in post-divorce efforts to enforce parties agreements); *see, e.g., Meyers & Batzell v. Moezie,* 208 A.2d 627, 629 (D.C.1965) (holding that "a [spouse] can be held liable for the legal expenses incurred by [the other spouse] in a divorce action only if the divorce court so orders during the pendency of the action").

In the instant case, Mrs. Sudderth filed for divorce in Nevada and Mr. Sudderth incurred $1800 in attorney's fees in defending against the Nevada action. Mr. Sudderth did not seek recovery of the attorney's fees from the Nevada courts, but requested that the Superior Court award the fees in the divorce action pending before it. Because D.C.Code § 16–911(a)(1) does not confer authority upon the trial court to award Mr. Sudderth attorney's fees incurred in an action separate from the divorce action instituted in the Superior Court, the trial court was without authority to make such an award.

In *Poliquin v. Poliquin,* 12 Va.App. 676, 406 S.E.2d 401 (1991), the Virginia Court of Appeals faced a similar circumstance to the one in this case and held that the trial court did not have the authority under its governing statute to award a wife attorney's fees she incurred in defending against her husband's Ohio divorce action that was later dismissed. *Id.* at 405–06. The governing statute provided authority for the Virginia trial court to award attorney's fees "in any suit for divorce … in which the suit is instituted or pending." *Id.* (emphasis omitted). The Court of Appeals concluded that while the Virginia trial court had authority to award the wife attorney's fees incurred in the divorce litigation pending in Virginia, the husband's Ohio divorce suit was "a separate suit instituted and terminated in a foreign jurisdiction," and thus, the Virginia trial court

---

In *Rachal,* a divorce action, the trial court awarded fees to the wife for legal services performed in connection with a prior appeal involving the same action. Although we remanded the attorney's fee award on other grounds, we explained the statement upon which Mrs. Sudderth relies by highlighting that "fees for services performed in the trial court are normally awarded by the trial court, and fees for services on appeal are normally awarded by the appellate court," and thus, "the request for counsel fees in the prior appeal should have been presented to this court, which would have been in the best position to determine the value of counsel's services in that appeal." *Id.* Consequently, the language Mrs. Sudderth cites in *Rachal* is not particularly relevant here.

had no inherent authority to award attorney's fees incurred by the wife in defending the Ohio action. *Id.*

Similarly, in *Mantell v. Mantell,* 384 Pa.Super. 475, 559 A.2d 535 (1989), the reviewing court reversed the trial court's counsel fee award to the wife who had incurred fees in defending against a separate divorce action instituted by her husband in Texas, which the Texas court eventually dismissed for lack of subject matter jurisdiction. *Id.* at 542–43.

As was the case in *Poliquin* and *Mantell,* the governing statute in this case does not authorize the grant of attorney's fees in divorce actions where those fees were incurred in "a separate suit instituted and terminated in a foreign jurisdiction," *Poliquin, supra,* 406 S.E.2d at 405, or where those fees did not "arise as a direct result of the divorce action under consideration by the court"—*i.e.,* during the divorce proceedings before the court, *Mantell, supra,* 559 A.2d at 543. Rather, D.C.Code § 16–911(a)(1) authorizes the trial court to require a spouse to pay counsel fees incurred during the divorce action pending before the Superior Court. Mr. Sudderth incurred the attorney's fees in the Nevada action, and thus, it is up to the Nevada courts to determine whether Mrs. Sudderth should compensate him for any fees he expended in the litigation brought before its courts.

Accordingly, the trial court here did not have authority to award attorney's fees for services performed in the Nevada action and erred in ordering Mrs. Sudderth to pay $1800 to Mr. Sudderth for attorney's fees. We remand the case with instructions to vacate that part of the final judgment.

Accordingly, the decision of the trial court is

*Affirmed in part; reversed in part.*