# District of Columbia
# Court of Appeals

No. 14-FM-100

IVANA CEROVIC,

                                Appellant,

  v.

DUSKO J. STOJKOV,

                                Appellee.

F I L E D

MAR **17** 2016

DISTRICT OF COLUMBIA
COURT OF APPEALS

**DRB-3624-11**

On Appeal from the Superior Court
of the District of Columbia

BEFORE:  GLICKMAN and FISHER, *Associate Judges*; and RUIZ, *Senior Judge*.

## J U D G M E N T

      This case came to be heard on the transcript of record and the briefs filed, and was argued by counsel.  On consideration whereof, and for the reasons set forth in the opinion filed this date, it is now hereby

      ORDERED and ADJUDGED that the judgment of the trial court is reversed, and the case is remanded so that the trial court may determine whether the appellant proved, by a preponderance of the evidence, that she and the appellee entered into a marriage under Serbian or District of Columbia law prior to 2010; recalculate the parties' marital debt, without any attorney's fees incurred in connection with their divorce; reconsider, in light of the recalculation of marital debt, and, possibly of marital property (if it is determined that the parties had a prior marriage), the equitable distribution between the parties under D.C. Code § 16-910, and, if appropriate, whether alimony payments to the appellant are warranted under § 16-910 (d); consider whether attorney's fees should be awarded to either party under D.C. Code § 19-911; and reconsider sanction.

                                For the Court:

                                JULIO A. CASTILLO
                                Clerk of the Court

Dated:  March 17, 2016.

Opinion by Senior Judge Vanessa Ruiz.

*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

## DISTRICT OF COLUMBIA COURT OF APPEALS

No. 14-FM-100

IVANA CEROVIC, APPELLANT,

v.

DUSKO J. STOJKOV, APPELLEE.

FILED 3/17/16
District of Columbia
Court of Appeals

Julio Castillo
Clerk of Court

Appeal from the Superior Court
of the District of Columbia
(DRB-3624-11)

(Hon. Jennifer A. DiToro, Trial Judge)

(Argued December 10, 2014                        Decided March 17, 2016)

*Edward E. Schwab* for appellant.

*Christopher M. Locey*, with whom *Michael A. Troy* was on the brief, for appellee.

Before GLICKMAN and FISHER, *Associate Judges*, and RUIZ, *Senior Judge*.

RUIZ, *Senior Judge*: Appellant, Ivana Cerovic, and appellee, Dusko J. Stojkov, were divorced by Decree of Absolute Divorce entered by the Superior Court of the District of Columbia. Cerovic argues on appeal that when making an equitable distribution of property upon dissolution of the marriage, the trial court erred (1) in its determination that the parties had not been married before their

wedding ceremony in 2010, by entering into either a "non-marital cohabitation" under Serbian law in 2003 or a common law marriage when they later relocated to the District of Columbia; and (2) in its inclusion of attorney's fees incurred in connection with the divorce proceedings as marital debt. Cerovic also argues that the trial court abused discretion in its equitable distribution of property, denial of her requests for alimony and attorney's fees, and in its imposition of a sanction for failure to present her argument under foreign law in a timely manner. We agree that the trial court committed legal error in its consideration of Cerovic's claim that the parties had been married before their wedding ceremony and in its inclusion of attorney's fees incurred in the divorce proceedings as marital debt. These and other errors require that we remand the case for further proceedings consistent with this opinion that could affect the distribution of property, alimony, the award of attorney's fees, and the sanction.

## I. Facts

### A. The Parties' Courtship and Marriage

Cerovic and Stojkov are both native Serbians. Stojkov became a naturalized American citizen in 2006 and Cerovic is a Serbian citizen who, at the time of trial, had a pending application for United States citizenship based on her marriage to

Stojkov. She has a bachelor's degree and a master's degree in Business Administration. He is a licensed attorney in the United States.

The parties met in Serbia in February or March of 2003. Although the exact date of their first meeting is in dispute, the parties agree that they first spent a significant amount of time together when they met at a restaurant opening they had attended separately; they met there again on April 15, 2003. According to Cerovic, she and Stojkov first had sexual relations on April 17, 2003, at which time they agreed to live together as husband and wife. Stojkov concurred that they quickly entered into a romantic and sexual relationship, but denied that they had an understanding about living together as a married couple. The trial court credited Stojkov's testimony, concluding that Cerovic's claim was "not credible" because she and Stojkov had at that time been alone together only twice. The trial court noted that the parties did not "merge any finances, bills, bank accounts or utilities," and that Cerovic did not have a key to Stojkov's apartment or contribute to his rent. According to Stojkov's brother, whose testimony was credited by the trial court, Cerovic and Stojkov would spend many nights at each other's residences, but each kept his or her own apartment, furnishings, and possessions. Cerovic's grandmother testified that the parties spent all their time together from when they first met in 2003 and that Cerovic moved into Stojkov's apartment, although they

would also sometimes spend the night in her apartment. Cerovic told her grandparents that she loved Stojkov and wanted to marry him. To allay the grandparents' concern about the future of their only grandchild, the grandmother testified, Stojkov reassured them that "Ivana is now my wife and as my wife she will be perfectly taken care of."[1] The trial court concluded, as a factual matter, that the parties did not "cohabit" while they resided in Serbia.[2]

In May of 2003, while on vacation in Portugal, the parties agreed to become engaged before Stojkov was scheduled to leave for the United States. They announced their engagement at a gathering of family and friends in Serbia in June of 2003, at which time Stojkov gave Cerovic a diamond engagement ring. Stojkov's father also presented Cerovic with a gift, according to Serbian custom. The trial court found, as a factual matter, that the parties became engaged in June of 2003.

---

[1] Cerovic's grandmother, a retired Serbian lawyer, lived with her husband in the same building as Cerovic. They were very close to Cerovic, the "only one" they had, following the death of Cerovic's mother twenty years earlier.

[2] The trial court's Order acknowledged that Cerovic's grandmother testified, but does not mention the substance of her testimony.

In early July 2003 Stojkov returned, alone, to the United States for work. At the time he was employed full-time as an attorney at Ernst & Young and owned an apartment at 2320 Wisconsin Avenue, Northwest, in the District of Columbia, which he had purchased in December of 2001. Cerovic was employed full-time in Serbia, but she took a leave of absence from her employment and followed Stojkov to the United States in August 2003 on a tourist visa. The two lived together in the Wisconsin Avenue apartment for the duration of Cerovic's stay in the United States, until she had to return to Serbia in July of the following year when her tourist visa expired. She cooked meals and cleaned the apartment. As she was unable to be employed on her tourist visa, she volunteered for the Serbian Unity Congress. She also supervised renovations to the Wisconsin Avenue apartment, for which Stojkov paid.

Cerovic applied for an H1-B visa (for skilled workers) to be eligible for employment in the United States. Her application was denied in September of 2004, and she appealed. In October of 2004, three months after Cerovic had returned to Serbia and was waiting for her visa situation to be resolved, Stojkov executed a contract to purchase a house at 3507 T Street, Northwest, on which he closed in November of 2004. Stojkov testified that he did not consult Cerovic about the purchase and did not list her on the title or mortgage, but said that he

purchased the house with the expectation that he and Cerovic would live there together. Cerovic testified that she communicated with Stojkov "all the time" while she was in Serbia and was initially against purchasing the T Street house. Stojkov sold the Wisconsin Avenue apartment in December 2004. Cerovic did not contribute funds to purchase the Wisconsin Avenue apartment, the T Street house, or an apartment that Stojkov later purchased in Novi Sad, Serbia in August of 2006.

Cerovic's visa application was granted in January of 2005, and she promptly returned to the United States where she joined the Serbian Unity Congress as an employee. The T Street house Stojkov had purchased for them to live in was undergoing renovations, so the parties resided at a friend's apartment from February to July of 2005. They moved into the T Street house together in July of 2005 and it was their home until their separation in November of 2010, although Stojkov lived in Vienna for work from the end of 2007 until mid-2009. Cerovic testified that she remained in the United States so as not to jeopardize her visa status and that she and Stojkov visited each other regularly during that time. Cerovic testified that she purchased food for the household, and paid various household expenses and the insurance for Stojkov's vehicle. Additional

renovations to the T Street house were made in 2006 and 2010; Cerovic coordinated the selection of the contractors for the project, which Stojkov financed.

The trial court was presented with evidence that the parties considered themselves to be married during the years they lived together in the District of Columbia (2003-04 and 2005-10). A menu from a restaurant (The Inn at Little Washington in Virginia) dated April 15, 2005, wished the parties "Happy Anniversary." The trial court credited Stojkov's testimony, however, that he misled the restaurant by lying about the anniversary in order to get a table on short notice, and noted that there was no evidence of other anniversary celebrations or cards during the seven-year period Cerovic claimed they had deemed themselves to be married. Similarly, in 2008, while Stojkov was working in Vienna, he sent an email to his bank saying he had neglected to add his "wife, Ivana Cerovic" to his new bank account. The trial court again credited Stojkov's testimony that he also lied to the bank about Cerovic being his wife, this time so that he could add her to his account remotely, while he was out of the country. During the same period, Cerovic wrote several emails to Stojkov in which she referred to herself as his wife or that she signed "Wife" or "Wifey." However, there is evidence of only a single response from Stojkov to the emails, in which he referred to Cerovic as "my happiness," rather than his wife. Cerovic's childhood friend testified that Stojkov

addressed Cerovic using the Serbian word "žena/o," which means both "wife" and "woman." In a letter to his father, Stojkov referred to Cerovic as "snajki," which can mean both "daughter-in-law" and "lass" or "girl."

There was also evidence that the parties did not consider themselves to be married. Friends testified that they did not hold themselves out as a married couple; a neighbor testified that nothing either of them said or did indicated that they were married as opposed to living together in a romantic relationship; and a friend testified that they never referred to each other as "husband" or "wife" and did not wear wedding rings. The trial court took note that Cerovic and Stojkov did not maintain a joint bank account[3] or a joint budget, did not assume a common name, owned real property separately, did not have joint debts, and paid bills in their own names without contribution from the other. Additionally, while Stojkov was employed with Patton Boggs, LLP, from 2004 to 2008, he identified himself as single, without any dependents, on personnel records and yearly health insurance enrollment forms, and Stojkov listed Cerovic as his "fiancée" on an insurance beneficiary designation form. Stojkov filed his federal income tax returns as single, unmarried in 2004, and from 2006 through 2009; whereas in

---

[3] As noted, however, Stojkov had asked the bank to add Cerovic to his account.

2010, the year of the ceremonial marriage, he filed as "married filing separately." Cerovic also filed federal tax returns as single from 2005-2008.

Cerovic testified that Stojkov suggested that they should get married in February or March of 2010. According to Cerovic, the wedding was a "confirmation" of their marital status, and was undertaken to allay any question from United States immigration authorities about the validity of their Serbian union. Stojkov acknowledged that he was prompted to suggest marriage at that time because Cerovic's visa was to expire later in 2010, and she needed to apply for a green card based on their marriage. He testified, however, that even though the timing of his proposal was related in part to Cerovic's immigration status, he was motivated by love and affection. He wished to "patch up" and "rekindle" their relationship which had deteriorated, including a physical altercation at the end of 2009, and hoped that marriage would be "an expression of love and commitment." They were married in a ceremony held in Las Vegas on April 15, 2010. The court found that they spent "many thousands of dollars" on Cerovic's wedding dress and shoes, wedding bands, travel, hotel, photographs and other expenses incident to their wedding ceremony.[4]

---

[4] The trial court inferred from the fact that Cerovic bought a wedding dress that she had not considered herself to be already married at the time.

The parties' relationship did not improve and they separated in November 2010, seven months after the wedding in Las Vegas. On October 3, 2011, Cerovic filed a petition for a civil protection order against Stojkov; Stojkov filed his own petition on November 3, 2011. After a temporary protection order was issued, both cases were subsequently dismissed with prejudice, at the request of the parties, on July 6, 2012.

## B. The Divorce Proceedings

On November 21, 2011, Stojkov filed a complaint for divorce, based on a one-year voluntary separation, that commenced the contentious litigation that resulted in the orders at issue in this appeal. His complaint asserted that he and Cerovic were married on April 15, 2010 (the wedding in Las Vegas), and that they separated later that same year, on November 18. In her answer, Cerovic claimed that she and Stojkov had established a common law marriage before the formal wedding ceremony, beginning on April 15, 2003, while they were in Serbia, and that they lived in the District of Columbia as husband and wife from July 2003.[5]

---

[5] Cerovic also filed a counterclaim for unjust enrichment, which the trial court dismissed. The counterclaim is not an issue on appeal.

Stojkov disagreed, and filed a motion *in limine* for a ruling that there had been no marriage before the 2010 wedding ceremony. Stojkov argued that there could have been no "common law marriage" while they were in Serbia because Serbian law would govern and Serbia is a civil law country. Cerovic opposed the motion. The trial court bifurcated the proceedings, taking evidence first as to whether the parties had established a common law marriage, to be followed by evidence pertaining to the division of marital property. On April 4, 2012, two days before the first scheduled trial date in the first phase of the proceedings, Cerovic submitted a memorandum of law in which she argued that she and Stojkov had established a "non-marital cohabitation" under Serbian law, beginning on April 15, 2003. When Stojkov objected to the lack of notice and late introduction of Serbian law into the proceedings, the trial court offered to continue the trial and, after Stojkov's counsel declined the continuance, the trial proceeded as scheduled. The trial court awarded attorney's fees to Stojkov as a sanction for the lack of timely notice in the amount he owed his attorney for the first day of trial.

After the first phase of the proceedings, the trial court issued an order on June 3, 2013, in which it concluded that property acquired during a Serbian non-marital cohabitation could not be distributed as marital property under D.C. Code § 16-910 (2012 Repl.) because the statute provides for property distribution

following the dissolution of a "marriage" and a Serbian non-marital cohabitation is not a marriage. Thus, any property acquired during such a relationship would be the "sole and separate property" of the person who acquired it. The trial court also determined that even if a non-marital cohabitation were considered a marriage for purposes of § 16-910, Cerovic had not established, by clear and convincing evidence, that she and Stojkov had such a relationship under Serbian law or a common law marriage in the District of Columbia before their ceremonial marriage in 2010. The trial then proceeded on the premise that the only valid marital relationship was the one formalized by the wedding ceremony on April 15, 2010.

After the second phase of the proceedings,[6] the trial court issued a second order, dated December 23, 2013, that distributed the marital property and debts pursuant to D.C. Code § 16-910, based on the 2010 ceremonial marriage. As part of the calculation, the trial court classified attorney's fees incurred by the parties in the divorce proceedings as marital debt, to be distributed equitably between the parties. The court allocated to Cerovic one third of Stojkov's marital debt of $105,897.70 (which included $33,701 in outstanding debt for fees owed to his attorneys), all of Cerovic's outstanding debt to her attorneys ($28,368.92), and

---

[6] There were a number of motions and rulings concerning discovery and pendente lite alimony, but they are not contested on appeal.

$10,000 she had charged on Stojkov's credit card to pay her attorney's fees.[7] Overall, Cerovic was allocated $45,632.56 in debt, or roughly half of what the court considered to be the parties' marital debt (i.e., including both parties' outstanding debt to their lawyers). The trial court denied Cerovic's requests for alimony and attorney's fees. The trial court concluded that an alimony award to Cerovic would not be "just and proper" because she was awarded temporary support in the form of rehabilitative alimony and continuing use of the T Street house throughout the two-year pendency of the litigation; she has the ability to fully support herself; neither party has physical or mental health issues; and, although the employment history of both parties has been "erratic," Cerovic's employment history was more stable than Stojkov's. The trial court concluded that it would be "inequitable" to award attorney's fees to Cerovic because the litigation, though lengthy, had not been complicated, with the exception of matters concerning choice of law and Serbian law. The trial court considered that it had already taken the "relevant equities" into account in assigning part of Stojkov's debt related to attorney's fees to Cerovic in its equitable distribution of the marital

---

[7] In total, Stojkov incurred $144,203 in attorney's fees while Cerovic incurred $50,640. She was unable to pay partway through the proceedings and her counsel withdrew in June 2013, after the trial court's first order. From that point forward, Cerovic represented herself during the second phase of the proceedings, including trial and several motions.

property. Cerovic timely appealed the trial court's orders of June 3, and December 23, 2013.

## II. Analysis

### A. Serbian Non-marital Cohabitation[8] and District of Columbia Common Law Marriage

A central issue in the case was whether the parties had a legally recognized marriage before the wedding ceremony in April 2010, which took place only seven months before they separated. The date of the parties' marriage is significant in determining the property and debt that is deemed marital and subject to distribution, *see* D.C. Code § 16-910 (b) (referring to property "acquired during the marriage"); and in calculating the duration of the marriage, which is a factor to be considered in evaluating the equities of the distribution, *see id.* at (b)(1) (listing duration of marriage as a relevant factor), and the award of alimony, *see* § 16-913 (d)(4) (same, with respect to alimony).

---

[8] In Serbian the term is "vabranča zajednica." The trial court and the parties sometimes also refer, in English, to a Serbian "extramarital communion" or "extramarital community." We use the term "non-marital cohabitation" as that is the term used in the translation of excerpts of the Serbian Constitution and Family Act from the Serbian Embassy in Washington, D.C., presented by Cerovic to the trial court.

1.      *The Trial Court's Determination*

The trial court determined that the parties were not married before their wedding ceremony in 2010, after having found that (1) they did not have a non-marital cohabitation under Serbian law, and (2) they did not have a common law marriage during the time that they lived together in the District of Columbia.  In making these determinations, the trial court imposed a burden on Cerovic, as the proponent of the earlier marriage, to prove her claim by clear and convincing evidence.  The trial court also concluded that even if there had been a non-marital cohabitation under Serbian law, it was not a "marriage" for purposes of equitable distribution under D.C. Code § 16-910.

2.      *Burden of Proof*

Cerovic contends that the trial court erred in concluding that she did not prove that the parties had established a marriage (under Serbian or District of Columbia law) prior to the 2010 wedding ceremony in Las Vegas because the trial court applied an incorrect standard (clear and convincing evidence) rather than preponderance of the evidence.  We agree and conclude that because of that legal

error the trial court's finding that the parties did not enter into a marriage in Serbia or in the District of Columbia prior to their wedding in 2010 cannot be sustained.

It is well established that a party claiming that a common law marriage exists must prove the existence of that common law marriage by a preponderance of the evidence. *See Coates v. Watts*, 622 A.2d 25, 27 (D.C. 1993). It is similarly settled that where two marriages are at issue, there is a presumption that the later marriage is the valid one. *See Johnson v. Young*, 372 A.2d 992, 994 (D.C. 1977). This presumption is "one of the strongest presumptions known to the law" and is among those that "represent a strong social policy in favor of reaching a particular result in the close or doubtful case." *Mayo v. Ford*, 134 A.2d 38, 41 (D.C. 1962). Although the presumption is not conclusive, it can be rebutted only by "'strong, distinct, satisfactory, and conclusive' evidence." *Id.* (quoting *Harsley v. United States*, 187 F.2d 213, 214 (D.C. Cir. 1951)). Therefore, even though generally speaking, a common law marriage may be proven by a preponderance of the evidence, we have stated that where an asserted common law marriage precedes another marriage, to overcome the presumption of the validity of the later marriage

the proponent of the prior, common law marriage must prove its existence by "clear and convincing evidence."[9] *Johnson*, 372 A.2d at 994.

It is not necessary, however, to apply that heightened evidentiary burden in every case where a prior common law marriage is asserted. For the reasons we now discuss, the requirement that the proponent of the first marriage must meet a clear and convincing evidence standard applies only in situations in which the proponent is attempting to prove that the common law marriage with one spouse precedes marriage with a *different* spouse, *i.e.*, situations in which the parties to the asserted successive marriages are not the same.

In *Johnson*, for example, the husband entered into a common law marriage with one woman and subsequently ceremonially married another woman. The court held that the validity of the earlier, common law marriage had to be proven

---

[9] Once an earlier marriage is proven, it renders invalid a later marriage. *See* D.C. Code § 16-904 (d)(1) (2012 Repl.) (providing that a marriage contract may be annulled "where such marriage was contracted while either of the parties thereto had a former spouse living, unless the former marriage had been lawfully dissolved"); D.C. Code § 46-401.01 (2012 Repl.) (declaring as "prohibited" and "absolutely void ab initio": "the marriage of any persons either of whom has been previously married and where previous marriage has not been terminated by death or a decree of divorce"); *Lee v. Lee*, 201 A.2d 873, 875 (D.C. 1964) (declaring attempted ceremonial marriage void because earlier common law marriage had not been dissolved).

by clear and convincing evidence to rebut the presumption that the later, ceremonial marriage was valid. 372 A.2d at 994. Conversely, in *East v. East*, 536 A.2d 1103, 1105 (D.C. 1988), where the existence of only one marriage — a common law marriage — was at issue, the court determined that the proponent's burden of proof is a preponderance of the evidence. The *East* court explained that a common law marriage need only be established by a preponderance of the evidence "[a]bsent a later marriage which triggers the presumption" that the later marriage is valid. *Id.* In *East* the court was not faced with asserted successive marriages and therefore did not need to address whether the standard of proof should differ depending on whether the successive marriages are between the same or different parties. In *Bansda v. Wheeler*, 995 A.2d 189, 198 (D.C. 2010), on the other hand, the trial court applied the preponderance of the evidence standard to proof of a common law marriage in the context of a case in which the same parties were subsequently ceremonially married. The trial court did not expressly consider what the standard should be in such circumstances or refer to the presumption that the later marriage is valid. In affirming the trial court's determination that no common law marriage existed, this court simply restated that the proponent must establish the existence of a common law marriage by a preponderance of the evidence. *Id.*[10]

---

[10] Of course, this court did not need to consider the applicability of a stricter

(continued . . .)

Considering these cases and the policies behind the presumption in favor of the later marriage, we now make explicit that the proponent of a common law marriage that precedes a ceremonial marriage between the same two individuals need only establish the claim by a preponderance of the evidence. The evidentiary preference in favor of the later marriage assumes different partners, as it "is grounded in the presumption of innocence of the crime of bigamy, on the presumption of the regularity of the acts of licensing and officiating officers, and in the strong public policy of fostering respectability and protecting offspring from the taint of illegitimacy." *Mayo*, 184 A.2d at 41 (discussing the presumption in ruling on the validity of two marriages between a man and two different women). These concerns are not present in a situation in which a couple enters into a common law marriage and subsequently celebrates an official wedding ceremony. There is no bigamy where the same two individuals are involved and any children of the couple are, under District of Columbia law, entitled to the same legal protections whether the parents are married in a ceremony or have established a

_____

(. . . continued)

standard because if the proponent's evidence did not meet the preponderance standard, it also did not meet the more exacting clear and convincing standard.

common law marriage.[11]   The regularity of the acts of licensing and officiating officers is not called into question by the preexisting common law marriage of a couple that decides to formalize their union in a ceremonial marriage.  Nor is the later marriage imperiled by the assertion of the earlier one, as is the case with successive marriages with different spouses, see note 9 supra, because recognition of an earlier marriage between the same spouses does not invalidate the later marriage.  Thus, in situations involving the same two individuals there is no overriding need to alter the usual quantum of proof necessary to show that two persons entered into a common law marriage:  a preponderance of the evidence.

This is not to say that we retreat from the principle that claims of common law marriage "should be closely scrutinized."  *Bansda*, 995 A.2d at 198 (quoting *Coates*, 622 A.2d at 27).  We reiterate that living together, by itself, is not a common law marriage.  *See Coates*, 622 A.2d at 27 (finding proof of cohabitation alone insufficient).  Being engaged, by itself, does not constitute a common law marriage, but rather may signify an intention to marry.  *See Bansda*, 935 A.2d at 199 (noting that "an intent to marry someday . . . tends to show the opposite [of a common law marriage] by showing that the parties, for whatever reason, were not

---

[11]   Indeed, children of unwed parents also have the same legal protections. *See* D.C. Code § 16-914 (2012 Repl.); *Ysla v. Lopez*, 684 A.2d 775, 779 (D.C. 1996).

ready to be legally married until they married" in a ceremony). On the other hand, the fact that a couple decides to have a formal wedding ceremony is not conclusive evidence that they did not consider themselves to be already married, as it "might simply represent a desirable 'upgrade' in social status and official acceptability." *John Crane, Inc. v. Puller*, 899 A.2d 879, 919 (Md. 2006). "For a variety of reasons, partners in common-law marriage may seek the additional advantages of an official ceremonial imprimatur." *Id*. What the proponent of a common law marriage that precedes a ceremonial marriage must show is that there has been "cohabitation, as husband and wife, following an express mutual agreement, which must be in words of the present tense." *Id*.

In this case, the trial court's analysis was legally flawed because it applied a burden of proof that was too high in the circumstances of this case. A trial court errs as a matter of law if it makes a determination that applies an incorrect standard of proof. *See Russell v. CALL/D, LLC*, 122 A.3d 860, 870 & n.16 (D.C. 2015) (noting, in connection with argument that judge had held litigant to a heightened standard of proof, that trial court erroneously exercises discretion if it applies incorrect legal standard). As the weighing of evidence against the proper standard is a function reserved to the trial court as finder of fact, *see Ruffin v. Roberts*, 89 A.3d 502, 506 (D.C. 2014) (when reviewing for abuse of discretion, appellate court

reviews legal determination of trial court de novo and factual findings for clear error), a reviewing appellate court must remand the case to the trial court for redetermination of the facts against the proper standard unless the record is clear that the trial court either must, as a matter of law, or would, based on other findings not tainted by the error, come to only one determination. *See id.* (observing that although trial court applied erroneous standard of proof, a separate reason relied upon by trial court sufficed to support ruling on an alternative basis). That is not so in this case, where the trial court emphasized the high burden of clear and convincing evidence that it was applying as being critical to supporting the presumption in favor of the later marriage noting that it is "one of the strongest in the law."[12] For the reasons we have discussed, however, that strong presumption is not operative in this case where the claimed earlier marriage involves the same couple as in the later marriage. Moreover, as the trial court recognized, there was substantive testimony and documentary evidence presented at trial that supported

---

[12] The trial court's order observed that "[c]lear and convincing evidence is most easily defined as the evidentiary standard that lies somewhere between preponderance of the evidence and evidence probative beyond a reasonable doubt, such evidence would produce in the mind of the finder of fact a firm belief or conviction as to the facts sought to be established." (quoting *In re Estate of Nethken v. Peerless Ins. Co.*, 978 A.2d 603, 607 (D.C. 2009).

the existence of an earlier marriage between the parties.[13]  Thus, we cannot, as a reviewing court, dispense with a remand on the ground that the outcome is either required as a matter of law or that the trial court's determination on remand under the appropriate standard is a foregone conclusion.

In addition, we note that the trial court's order articulated the presumption as being in favor of a *ceremonial* marriage, rather than the *later* marriage.  But as *East* makes clear, the rule is that "where there is more than one marriage, the more recent one is valid," 536 A.2d at 1105, and the presumption operates in favor of the later marriage regardless of whether it is ceremonial or common law in nature.  *See Mayo*, 184 A.2d at 41 (noting that in case of "clash" between the presumption favoring continuance of a valid ceremonial marriage and the presumption in favor of the later marriage, "the first must give way to the second").  Perhaps the trial court misspoke because it had in mind that in this case the second marriage was ceremonial in nature, but we clarify the principle so that on remand there is no confusion on the subject.

---

[13]  The trial court observed that neither party's position on whether they were already married when they celebrated the wedding ceremony in 2010 was "unreasonable."  It also noted that it "did not find that the testimony of witnesses, the evidence presented, or the record were frivolous."

Accordingly, we remand the case with instructions to the trial court to reconsider the evidence under the proper legal standard: whether Cerovic has proved, by a preponderance of the evidence, that she and Stojkov were married prior to their wedding ceremony in 2010 beginning when they were in Serbia in 2003 and/or when they subsequently lived together in the District of Columbia. If the trial court determines that there was such a prior marriage, it must then establish its duration and identify the property acquired and debts incurred that should be considered marital for the purpose of making an equitable distribution of property and reconsider the award of alimony.

3.      *Serbian Non-marital Cohabitation*

Cerovic contends that in addition to imposing a too-high burden of proof, the trial court erred in finding that the parties did not enter into a non-marital cohabitation in Serbia, and in further concluding that, even if they did, it is not a "marriage" for purposes of equitable distribution under D.C. Code § 16-910. The existence of a marriage is determined by the law of the jurisdiction where the marriage occurred. *See Bansda*, 995 A.2d at 198 (determining that there was no domestic partnership in the Netherlands for purposes of § 16-910 where registration required by Dutch law had not taken place). In this case, therefore, the

nature of the parties' relationship when it began in Serbia is to be determined in accordance with Serbian law. "The court may consider 'any relevant material' in 'determining foreign law,' and its ruling thereon is considered as a ruling on a question of law." *See Oparaugo v. Watts*, 884 A.2d 63, 71 (D.C. 2005) (quoting Super. Ct. Civ. R. 44.1 and noting that the Rule puts to rest the idea that foreign law is a question of fact.). Our review is therefore de novo.

Both parties presented arguments and evidence concerning non-marital cohabitation under Serbian law.[14] Both parties criticized the qualifications of the authors of each other's submissions. Although the trial court's order of June 3, 2013, did not make explicit reference or cite to these materials, it borrowed language from the submissions of both parties. The order listed the essential elements of non-marital cohabitation under Serbian law as: (1) no barriers prevent the marriage of the parties, (2) the parties "live together in the same way that

---

[14] Cerovic submitted translations of excerpts from the Serbian Constitution and Family Act and a chapter from a book (unidentified) entitled: "Legal Aspects of Unmarried Cohabitation in Serbian Law — the Alternative Way for Man and Woman to Live Together," authored by Olga S. Jovic, Faculty of Law, Priština, Serbia ("Jovic Chapter"). Stojkov presented an "Expert Witness Report" by Serbian attorneys Joksovic, Stojanovic & Partners, dated June 5, 2012, that was prepared for this litigation, "for the benefit of a judicial officer of the D.C. Superior Court." In the report, Serbian counsel represent that they are licensed to practice law in Serbia, that they are "extremely familiar" with Serbian family law, and that they "recognize an ethical responsibility that goes beyond the oath we have taken herein, to be candid with the court."

married couples do," and (3) the duration of the cohabitation is "long lasting." These elements appear to be well founded in light of the definition of non-marital cohabitation in Serbian law. *See* Serbian Family Act, Art. 4 ("Non marital cohabitation is the sustained cohabitation of a man and a woman between whom there are no marriage impediments (cohabiters)." (Cerovic's translation) ("Extra marital communion is a long lasting communion of a woman and a man between whom there are no marital barriers (extramarital partners)." (Stojkov's translation). Moreover, these elements of the relationship are mentioned in the Expert Witness Report submitted by Stojkov and the Jovic Chapter submitted by Cerovic. On this record, we agree with the trial court's delineation of the fundamental elements of Serbian non-marital cohabitation.

a) *The Trial Court's Determination*

Cerovic does not dispute that these are the essential elements of non-marital cohabitation under Serbian law. Rather, she disagrees with the trial court's assessment of the evidentiary showing required. Specifically, she argues that the trial court clearly erred in finding that she and Stojkov did not live "together in the same way as married people do" or "cohabit" because there was undisputed evidence of "cohabitation," which Cerovic equates with sustained monogamous

sexual relations. She also argues that the trial court improperly took into account financial and logistical arrangements that were not relevant under the circumstances of the parties' time together in Serbia and failed to take into account factors that were relevant, such as the fact that the parties planned "for a future together."

As we have already determined, the trial court must reconsider the question of the existence of a prior marriage between the parties under the proper evidentiary standard, preponderance of the evidence. Without commenting on the trial court's eventual finding under that standard, we address the evidentiary arguments Cerovic presents as they will be relevant on remand. First, concerning the question of cohabitation, in light of the evidence of Serbian law presented to the trial judge, we see no error in the trial court's implicit determination that evidence of a sexual relationship, even if exclusive, is not enough to prove that the parties lived "together in the same way that married couples do." Words used in a statute are usually given their commonly understood meaning, and must be viewed in context and interpreted consistent with the statutory purpose. *See Tippett v. Daly*, 10 A.3d 1123, 1127 (D.C. 2010) (en banc) (referring to statutory interpretation as a "holistic endeavor" (quoting *Washington Gas Light v. Public Serv. Comm'n*, 982 A.2d 691, 716 (D.C. 2009))). Cerovic has presented no

evidence that the Serbian word for "cohabitation" commonly means only sexual relations or that such an interpretation would be consistent with the purpose of Article 4 of the Serbian Family Act. To the contrary, the evidence submitted by both parties is in substantial agreement that non-marital cohabitation under Serbian law entails a sustained and multi-faceted relationship. The Jovic Chapter submitted by Cerovic, for example, describes non-marital cohabitation as "joint living" and "joint household," a "long lasting" and "lasting life cohabitation of a man and a woman, that is unmarried partners." What constitutes non-marital cohabitation, according to the Jovic Chapter, is the "totality of the reciprocal relations of unmarried partners, the fact which compensates for the lack of the legal form of marriage." A sexual relationship is part, but not the whole of it.[15]

---

[15] *Dotellis v. Dotellis*, 187 A.2d 128 (D.C. 1962), on which Cerovic relies, is not to the contrary. In *Dotellis*, the court interpreted the word "cohabitation" in the District of Columbia divorce statute to mean sexual relations where the word was used as part of the phrase "voluntary separation from bed and board . . . without cohabitation." *Id*. at 129. The court considered "popular or common usage, and, especially, the context in which the word was used, for otherwise the word 'cohabitation' would have little or no meaning," where the essence of the divorce statute is to require proof that the parties live "separate lives." *Id*. at 129. *See Pedersen v. Pedersen*, 107 F.2d 227, 231 n.12 (D.C. Cir. 1939) (noting that "caution is appropriate against confusing matrimonial relations with the purely sexual side of marriage, merely one aspect of the total relation") (*quoted in Dotellis*, 187 A.2d at 128-29).

With respect to the factors that the trial court did take into account, such as whether the parties merged their finances or shared a residence to prove the parties' intent to live in a marriage-like relationship, we agree with Cerovic that those factors must be considered in light of their circumstances at the time. In this case, that meant both parties already had separate apartments and finances when they met and knew they would be together in Serbia only until Stojkov left for the United States in three months, which would have made consolidation of their finances and living arrangements impractical. However, the fact that they did not share keys to each other's apartments or "announce[] themselves as husband and wife to third parties" during that time — two factors the trial court also considered — are relevant in determining whether there was a "totality of reciprocal relations." The trial court did consider the parties' plans for the future. It found that the fact that Cerovic took a leave of absence from her employment in Serbia (but did not quit) to come to the United States and that Stojkov bought a house in the District of Columbia, without Cerovic's approval, at a time when Cerovic's H1-B visa had been denied belied Cerovic's claim that they considered themselves to be husband and wife. Stojkov's purchase of the house on his own, however, is not necessarily a rejection of a future life in common, as he testified that he made the purchase expecting they would live there together and knew that Cerovic had appealed the visa denial, an appeal she eventually won.

b) *Application of D.C. Code § 16-910 to Serbian Non-marital Cohabitation*

Cerovic contends that the trial court also erred in interpreting D.C. Code § 16-910 as not applying to a Serbian non-marital cohabitation at all because it is not a "marriage."

D.C. Code § 16-910 provides that "[u]pon entry of a final decree of legal separation, annulment, or divorce, or upon the termination of a domestic partnership pursuant to § 32-702 (d)," the trial court shall value and distribute "property and debt accumulated *during the marriage or domestic partnership*." D.C. Code § 16-910 (b) (emphasis added). Cerovic argued that a Serbian non-marital cohabitation is the Serbian equivalent of a common law marriage that "creates property rights without the need for a civil ceremony," citing Articles 4 and 191 of the Serbian Family Act. Thus, she argues, it should be treated similarly with respect to distribution of property. The interpretative question for this court, therefore, is whether, assuming the trial court were to find, on remand, that Cerovic has met her burden of proving the existence of a non-marital cohabitation in Serbia by a preponderance of the evidence, it is a "marriage" contemplated by D.C. Code

§ 16-910. This also is a question of law we review de novo, as it involves the interpretation of both D.C. Code § 16-910 and Serbian law.[16]

The trial court did not articulate the reasons for its conclusion that a Serbian non-marital cohabitation "is not a marriage," except to say that it is not a common law marriage because Serbia is a civil law jurisdiction Stojkov argued, in addition, that Serbian non-marital cohabitation should not be considered a marriage because (1) it need not be formally entered into or dissolved like a marriage, but rather is terminated "by virtue of factual termination of community life" and (2) there are

---

[16] On appeal, Cerovic argues that the trial court erred in not considering whether a Serbian non-marital cohabitation should be treated as a domestic partnership under District of Columbia law. She relies on D.C. Code § 32-702 (I) (2012 Repl.), which provides that "relationships established in accordance with the laws of other jurisdictions, other than marriages, that are substantially similar to domestic partnerships established by this chapter, as certified by the Mayor, shall be recognized as domestic partnerships in the District." This argument presents an issue of first impression with respect to the application of D.C. Code § 32-702 (I) to the courts in making a distribution of property under D.C. Code § 16-910. The argument was not made to the trial court and we therefore do not address it on appeal. *See Akassy v. William Penn Apts. Ltd. P'ship*, 891 A.2d 291, 304 n.11 (D.C. 2006). Moreover, Cerovic has presented no evidence that the Mayor has "certified" that a non-marital cohabitation under Serbian law is "substantially similar" to a domestic partnership under District of Columbia law. We review the trial court's ruling on the terms in which it was presented to and decided by the trial court, i.e., whether a Serbian non-marital cohabitation is equivalent to a "marriage." The trial court may, if it deems it appropriate, consider the domestic partnership argument on remand.

certain respects in which under Serbian law the property, inheritance and other rights of cohabiters are not like those of persons who are married.

It is clear that a Serbian non-marital cohabitation is not a formalized marriage. *See* Serbian Family Act, *Official Herald of the Republic of Serbia* No. 18/2005, art. 1 (Feb. 24, 2005) (referring to "marriage and marriage relations" and "relations in non-marital cohabitation"); Jovic Chapter at 214. But neither is a common law marriage and it is well established that property acquired during a common law marriage is considered "marital" and subject to equable distribution under D.C. Code § 16-910. *See Bansda*, 995 A.2d at 197-98 (reviewing the trial court's equitable distribution of property following the dissolution of a common law marriage); *Young-Jones v. Bell*, 905 A.2d 275, 277 (D.C. 2006). As Cerovic recognizes, there is an element of irony in arguing that a legal status labeled "nonmarital" should be deemed a marriage, but we agree that labels, particularly in translation, are not dispositive of the proper interpretation of the statute. Rather, we consider the substance of the elements that give the non-marital cohabitation relationship legal status under Serbian law. [17]

---

[17] The argument that non-marital cohabitation should not be treated on a par with common law marriage because Serbia is a civil jurisdiction is hyper-technical and not persuasive. The fact that Serbia is not heir to English common law does not undermine the argument that under Serbian law non-marital cohabitation is *in*

(continued . . .)

Stojkov emphasizes the differences between a Serbian non-marital cohabitation and a District of Columbia common law marriage. For example, a common law marriage may be legally terminated only by divorce or death of a spouse. *See Hoage v. Murch Bros. Constr. Co.*, 50 F.2d 983, 984 (D.C. 1931). A Serbian non-marital cohabitation, on the other hand, can be terminated by the conduct of the parties. But that can hardly be deemed dispositive because domestic partnerships, which are subject to the same equitable distribution of property as marriages under § 16-910, also do not require a court-decreed divorce or dissolution, but are terminated by consent of both partners, or even by the unilateral action of one of the partners. *See* D.C. Code § 32-702 (d) (2012 Repl.) (providing for filing a "termination statement" with the Mayor).

The Serbian Constitution, Article 62, declares that "[n]on marital cohabitation shall be equal with marriage, in compliance with the law," and Article 4 of the Serbian Family Act similarly provides that "[c]ohabiters have the rights and duties of spouses under the conditions of this Act." These provisions clearly denote that non-marital cohabitation is not only legally recognized as conferring

_____

(. . . continued)

*substance* akin to a common law marriage. Because Serbia is a civil law jurisdiction, non-marital cohabitation is codified in the law of Serbia rather than the creature of judicial decision-making. We focus on the law, not its source.

marriage-like benefits but enjoys constitutional protection in Serbia. With respect to the issue of property distribution presented in this case, Serbian law expressly provides that persons in a non-marital cohabitation have "joint" property rights. *See* Art. 191 of the Serbian Family Act[18]; Expert Witness Report ("[C]ourt practice [has] determined that an extra marital partner is equal in rights and obligations as a marital partner with respect to support and property, but not with respect to the right to inherit." (citing Decision of the District Court in Čačak, Gž 454/07, Apr. 18, 2007)). In light of the evidence of Serbian law that is of record in this case, we are bound by principles of comity to respect Serbian non-marital cohabitation as deserving of legal protection on a par with marriage, at least with respect to the distribution of property. *See Bansda*, 995 A.2d at 198 (applying Dutch law to determine whether domestic partnership existed for purposes of equitable distribution under D.C. Code § 16-910); *see also Hilton v. Guyot*, 159 U.S.113, 16 S.Ct. 139, 164 (1895) (defining comity as "the recognition which one nation allows

---

[18] Article 191 provides:

Joint Property

(1) The property that the cohabitees have acquired through work during their non-marital cohabitation is their joint property.

(2) The provisions of this Act governing relations between spouses apply accordingly to property relations between cohabitees.

within its territory to the legislative, executive, or judicial acts of another nation, having due regard both to international duty and convenience, and to the rights of its own citizens, or of other persons who are under the protection of its laws"). Thus, even if, as Stojkov asserts (and the evidence of Serbian law supports), some incidental property, inheritance, tax and other rights that attend a non-marital cohabitation are different from those of married spouses under Serbian law,[19] that does not mean that non-marital cohabitation should not be deemed as having a status "equal with marriage" that authorizes the trial court to distribute property under D.C. Code § 16-910.[20] The purpose of the court's authority is to sort out in an "equitable" fashion claims to property between divorcing spouses upon the entry of a final decree of divorce, thus bringing the parties' claims to complete resolution after weighing a variety of factors of the overall marital relationship. This objective would be thwarted if the trial court were unable to give cognizance to a relationship between the parties that has a status equal to marriage in the

---

[19] None of these different rights, e.g., to take the same family name, be a forced heir, or apply for citizenship based on the relationship, are relevant to this case.

[20] To be clear, once it has been determined that a Serbian non-marital cohabitation is a "marriage" for purposes of D.C. Code § 16-910, the trial court's obligation is not to implement Serbian law but to apply the equitable principles that have been established for distribution of property under D.C. Code § 16-910. The trial court's authority is derived from District of Columbia not Serbian, law.

relevant jurisdiction or if property and debts that accrued during that relationship were not considered in the equation or left unresolved.

On the record before us there are no findings or evidence as to whether the parties acquired property or debt during the time of the asserted Serbian non-marital cohabitation. However, in her counterclaim for unjust enrichment, Cerovic claimed entitlement to the "increase in value, from the date of purchase [in 2001], until the date of sale [in 2004]" of the Wisconsin Avenue apartment based on her "significant contributions, both monetary and non-monetary during the time after April 15, 2003, to assets in [Stojkov's] sole name." After the trial court denied the unjust enrichment claim, it considered the Wisconsin Avenue apartment to be Stojkov's pre-marital sole property based on its determination at the conclusion of the first phase of the proceedings that the parties did not have a non-marital cohabitation in Serbia. Whether additional evidence or findings are necessary is a matter properly for the trial court in the first instance, depending on the trial court's reconsideration of the issue of non-marital cohabitation under the preponderance of the evidence standard.

## B.  Distribution of Marital Property

Cerovic contends that the trial court abused its discretion in its allocation of marital debt.  She argues that the trial court did not have the authority to include attorney's fees in the marital debt calculation under § 16-910, and that the proportion of the debt allocated to her is inequitable in light of the large disparity between her income and Stojkov's, and the fact that, when she was unable to pay an attorney after June of 2013, she was forced to proceed pro se, whereas Stojkov kept incurring debt for legal representation in opposing her.

Cerovic also argues that the trial court did not have authority to require her to repay $10,000 in attorney's fees she charged to Stojkov's credit card because she had no other means to pay for an attorney to maintain the litigation, i.e., that it was "suit money," to which she was entitled.  She further argues that the order requiring her to pay $4,000 in rent for remaining in the T Street house during the proceedings should be stayed until it is determined on remand whether she has proven by a preponderance of the evidence that the parties had a common law marriage in the District of Columbia, in which case the T Street house would be marital property.

We review the distribution of marital property under § 16-910 for abuse of discretion. *See Abulqasim v. Mahmoud*, 49 A.3d 828, 837 (D.C. 2012). Accordingly, we first consider "whether the [trial court's] exercise of discretion was in error, and, if so, whether the impact of the error requires reversal." *Id.* (citation and internal quotation marks omitted).

We recognize that if the court were to determine on remand that the parties were married at some time prior to 2010, the court would need to recalculate the amount of marital property and debt and reconsider its equitable distribution. However, even if the trial court were to come to the same determination, that there was no prior marriage, the present distribution cannot be sustained because the trial court proceeded on a mistaken legal premise as to what constitutes debt subject to equitable distribution. In classifying and calculating marital debt, the trial court included the parties' attorney's fees, which was a sizeable portion of the debt it allocated between the parties.[21] The attorney's fees were incurred in connection with the dissolution of the marriage: a small portion of the fees was incurred during the litigation of the CPOs, which occurred during the parties' separation, and the bulk of the fees was incurred during the divorce proceedings.

---

[21] Outstanding debt for attorney's fees of both parties totaling $62,078.00 amounted to forty percent of the total marital debt of $157,209.

This court has not decided whether attorney's fees incurred during a divorce may be classified as marital debt for equitable distribution under D.C. Code § 16-910. It is well established, however, that under the "American Rule" "[p]arties to litigation usually pay their own costs and attorney's fees," which is subject to "only a few exceptions," such as fees authorized by statute, rule, or contract, or in cases involving bad faith. *Steadman v. Steadman*, 514 A.2d 1196, 1200 n.4 (D.C. 1986); *see Murphy v. Murphy*, 46 A.3d 1093, 1101 (D.C. 2012) ("In the absence of statutory or rule authority, attorney's fees are not allowed as an element of damages, costs, or otherwise." (quoting *Sudderth v. Sudderth*, 984 A.2d 1262, 1269 (D.C. 2009))). Although we have not yet considered the exact issue, our case law concerning attorney's fees in divorce cases suggests that attorney's fees are not distributed as debt under D.C. Code § 16-910, but may be awarded under D.C. Code § 16-911. *See, e.g.*, *Sudderth*, 984 A.2d at 1269 (considering the trial court's award of attorney's fees "[u]nrelated to the distribution of marital property"); *Meyers & Batzell v. Moezie*, 208 A.2d 627, 629 (D.C. 1965) (noting that "recovery of attorneys' fees is ancillary to the divorce action").

We begin our analysis with the words of the statute. *See Tippett*, 10 A.3d at 1126. The District of Columbia statute does not define the terms "marital property" or "marital debt." Section 16-910 simply refers to distribution of

"property and debt accumulated during the marriage." D.C. Code § 16-910 (b). Thus, a literal reading would permit inclusion of attorney's fees incurred in the course of divorce proceedings as debt to be distributed between the parties, because the parties were still legally married at the time the debt for attorney's fees was incurred, and in that sense was "accumulated *during* the marriage." (Emphasis added.) Many jurisdictions, however, do not classify attorney's fees incurred in the course of divorce proceedings as marital debt because "expenses of terminating the marriage itself can hardly be marital, especially where the termination results from the bad conduct or deliberate choice of the other spouse." Brett R. Turner, *Equitable Distribution of Marital Property* § 6:97 (2014). These jurisdictions do not permit attorney's fees to be distributed equitably because to be considered "marital debt," the obligation should be "a debt incurred during the marriage and before the date of separation, by either spouse or both spouses, for the joint benefit of the parties." *Finley-Swanson v. Swanson*, 823 N.W.2d 697, 706 (Neb. Ct. App. 2012); *see, e.g.*, *Rodvik v. Rodvik*, 151 P.3d 338, 346 (Alaska 2006) (holding that, on remand, the trial court should remove attorney's fees incurred during the divorce proceedings from the "marital debt" classification); *Smith v. Smith*, 934 So. 2d 636, 642 (Fla. Dist. Ct. App. 2006) (holding that the classification of divorce mediation fees as marital debt was error); *Schmitz v. Schmitz*, 950 So. 2d 462, 463 (Fla. Dist. Ct. App. 2004) (holding that the

classification of attorney's fees incurred after the filing of the divorce action as marital debt was error); *In re Marriage of Hansen*, 733 N.W.2d 683, 703 (Iowa 2007) ("Attorneys' fees incurred in dissolution proceedings are not marital debt."); Va. Code Ann. § 20-107.3 (5) (defining "marital debt" as "all debt incurred in the joint names of the parties before the date of the last separation of the parties").

In determining the scope of debts to be equitably distributed under § 16-910, we consider the statute as a whole. *See Tippett*, 10 A.3d at 1127. The District of Columbia statutory scheme governing actions for separation and divorce sets out different sources of authority and standards for the distribution of property (§ 16-910); for pendente lite relief, including attorney's fees (§ 16-911); and for alimony (§ 16-913). Section 16-911 provides:

> During the pendency of an action for legal separation, divorce, the termination of a domestic partnership pursuant to § 32-702 (d), where one of the domestic partners has filed a petition for relief under this section, or an action by a spouse to declare the marriage null and void, where the nullity is denied by the other spouse, the court may:

> (1) require the spouse or domestic partner . . . to pay suit money, including counsel fees, to enable such other spouse to conduct the case. The court may enforce any such order by attachment, garnishment, or imprisonment for disobedience. . . .

D.C. Code § 16-911 (a) (1) (2015 Supp.).

The purpose of allowing trial courts to award money to pay attorney's fees under § 16-911 is "to ensure that a party in a divorce action not be hindered unfairly in maintaining the action by unequal burdens between the spouses," or to "enable a spouse to conduct litigation." *Tydings v. Tydings*, 567 A.2d 886, 890, 891 n.5 (D.C. 1989). It aims "to equalize the burdens between the spouses; otherwise a party armed with superior economic resources may favor 'litigation as a means to force a settlement by attrition.'" *Id*. at 890. Consequently, "before a court may exercise its discretion to award suit money under § 16-911(a), the spouse requesting fees must make an initial showing that the suit money is necessary to enable that spouse to 'carry on or defend' the divorce action." *McClintic v. McClintic*, 39 A.3d 1274, 1279 (D.C. 2012) (quoting definition of "suit money" in *Rubin v. Rubin*, 195 A.2d 696, 700 (Md. 1963)). Thus, a "threshold showing of need" is mandatory to trigger application of § 16-911 (a). *Id.* That determination of need is to be made based on the financial situation of the requester as of the time that the litigation is taking place, although the award of fees may take place after the litigation is conducted. *See Araya v. Keleta*, 65 A.3d 40, 58 (D.C. 2013) (interpreting §16-911(a)(1) provision authorizing court to award suit money "during the pendency of an action for divorce" as permitting

award of fees "after trial and after the divorce decree has been issued"); *Tydings*, 567 A.2d at 891 (noting that statute's purpose would be "ill-served by a refusal to permit attorney's fees at all if a spouse subjected to harassing litigation were still fortunate enough  to win a substantial property distribution").

The award of fees under § 16-911, therefore, requires a two-step inquiry: first, "whether to award a fee, and if so, to whom"; and second, the amount of the award. *Steadman*, 514 A.2d at 1200-01.  Once the threshold showing of need has been met, the trial court may — but is not required to — award fees. *See McClintic*, 39 A.3d at 1279-80.  The determination whether to award fees and, if so, in what amount, involves a variety of factors, such as the current financial ability to pay of the opposing spouse, the requester's failure to cooperate and whether the requester made litigation "burdensome and oppressive" in a manner that increased its costs, the necessity for the services of an attorney and the quality and nature of the work performed. *See id*. at 1280; *Kelly v. Clyburn*, 490 A.2d 188, 191 (D.C. 1985).  The motivations of the parties may be taken into account, but depending on the size of the award, may not be given so much weight that it "creates the very real risk of turning an award of attorney's fees into punitive damages, which are beyond the power of the court to grant." *Rachal v. Rachal*, 489 A.2d 476, 478 (D.C. 1985).  Classification of attorney's fees incurred during

divorce proceedings as "marital debt," and distribution of debt for such fees between the parties as part of the equitable distribution of property, would bypass the specific statutory authority in § 16-911, without engaging in the two-step analysis we have interpreted the statute to require or considering the factors we have identified should be taken into account at each step of the process. To permit the trial court to effectively award attorney's fees through allocation of marital debt also falls outside the mechanism prescribed in the statute, which provides that an order for suit money is to be enforced by specified means: "attachment, garnishment, or imprisonment for disobedience." D.C. Code § 16-911 (a)(1).

In view of the specific and separate statutory section, D.C. Code § 16-911, that concerns attorney's fees for prosecution of divorce actions and the detailed analysis required for their award under that statutory provision, we hold that attorney's fees incurred during litigation of the dissolution of a marriage may not be classified as marital debt and distributed pursuant to D.C. Code § 16-910. *Cf. In re Marriage of Huff*, 834 P.2d 244, 248 (Colo. 1992) (holding that attorney's fees may not be incorporated into pendente lite payment because statutory scheme provides for different standards and separate determinations concerning division of property, attorney's fees and maintenance payments).

Consequently, on remand the trial court should exclude all attorney's fees incurred during litigation of the CPOs and the divorce from the marital debt calculus, re-determine the amount of marital debt incurred by the parties during their marriage (i.e., during the marital period after reconsideration of the evidence of an earlier marriage under the proper evidentiary standard), and reconsider the equitable distribution of that debt.[22]

The trial court also should consider on remand whether an award of attorney's fees under § 16-911 is appropriate pursuant to the required analysis. The trial court denied Cerovic's request for attorney's fees relying on the fact that it had effectively "awarded" attorney's fees to Stojkov when it distributed part of his debt for attorney's fees to Cerovic as marital debt. This was error because the first, and indispensable, determination under § 16-911 is whether the requesting party has made a showing of need. *See McClintic*, 39 A.3d at 1280. The trial court

---

[22] Because on remand the trial court will need to recalculate and redistribute the marital debt, and may include additional property as marital property, depending on its reconsideration of the claim of an earlier marriage, we do not consider Cerovic's claims of abuse of discretion addressed to the proportions in which the court allocated the debt.

has not made the predicate finding of need as to either party.[23] Once that showing

is made, the statute authorizes the award of fees, and the trial court may take a

number of factors into account in determining whether to make an award, and if so,

in what amount. On remand, the trial court should reconsider both parties' request

for attorney's fees under § 16-911, taking into account their financial need during

the litigation as well as their relative ability to conduct and/or defend the divorce

litigation. The court should make the necessary findings of fact and conclusions of

law. *See Murph*y, 46 A.3d at 1100-01 (citing Super. Ct. Dom. Rel. 57 (d)(3) and

*Moore v. Moore*, 391 A.2d 762, 770 (D.C. 1978)).

## C. Alimony

Cerovic contends that the trial court abused discretion in denying her request

for alimony. She claims entitlement to alimony because she was not awarded both

---

[23] It is not necessary that the spouse seeking suit money be penniless, but that the money is necessary for the spouse to "carry on or defend" the divorce action. *McClintic*, 39 A.3d at 1279. "[S]ome showing of inequality of litigation resources" during the litigation (i.e., before the outcome of the proceeding) must be made. *Id*. at 1280. Cerovic argues that the trial court abused discretion in denying her request for fees under § 16-911 because she clearly demonstrated a need, as she could not afford an attorney midway through the proceedings and had to continue pro se. Stojkov, who is an attorney, was able to retain his attorneys, although he had a considerable debt to his lawyers outstanding at the time of the court's disposition of the case.

temporary alimony and rent-free use of the T Street house, as the trial court erroneously thought when it denied her alimony request; she is unable to fully support herself; and although both she and Stojkov have had relatively stable employment, her job opportunities and salary history have been constrained by her visa situation, whereas Stojkov's income has been higher than hers.

The decision whether to award alimony is "committed to the sound discretion of the trial court and will be disturbed on appeal only when the record manifests an abuse of that discretion." *Weiner v. Weiner*, 605 A.2d 18, 19 (D.C. 1992) (quoting *McCree v. McCree*, 464 A.2d 922, 932 (D.C. 1983)). On appeal, "[w]e will not reverse an alimony award so long as the trial court made a fair and equitable award after considering the particular facts of the case in light of all relevant factors." *Sudderth*, 984 A.2d at 1266.

The purpose of alimony is to provide "reasonable and necessary support." *Leftwich v. Leftwich*, 442 A.2d 139, 142 (D.C. 1982). Under D.C. Code § 16-913 (d), the trial court must consider a variety of factors in determining whether to award alimony and how much alimony to award, including (1) the ability of the recipient to support himself or herself, fully or partially; (2) the time necessary for the recipient to gain education or employment; (3) the standard of living

established during the marriage; (4) the duration of the marriage; (5) the circumstances under which the parties became estranged; (6) the age and physical and mental health of each party; and (7) financial need. *See McEachnie v. McEachnie*, 216 A.2d 169, 170 (D.C. 1966) (listing factors).

The trial court considered many of these factors in concluding that appellant is not entitled to alimony. The trial court noted that appellant received temporary, rehabilitative alimony "as well as" continued use of the T Street property "through the nearly two years of the ongoing litigation"[24]; that appellant is able to support herself, is employed and has a pending application for U.S. citizenship that, if granted, would open more opportunities for employment; that she does not require further education; that neither party is in notably better physical or mental health than the other; and that both parties have "somewhat erratic" employment histories, but that Cerovic's had been more stable. The trial court considered the factors relevant to the strains in the marriage and found that both parties

---

[24] This is not accurate. The trial court entered an order on July 13, 2012, that required Cerovic to vacate the T Street house and Stojkov to pay $2,500/ month in pendente lite spousal support. The trial court then granted the parties' joint request to stay the order to vacate and for pendente lite support. When Stojov's motion to vacate the stay concerning occupancy of the house was granted, Cerovic was required to pay rent ($4,000) while she continued to occupy the T Street house and she has been required to make that payment. The record is clear that rent-free use of the T Street house was in lieu of, not in addition to, pendente lite support.

"contributed equally" to its dissolution. Although the trial court pointed to a number of permissible factors in denying Cerovic's request for alimony, on the current record we cannot discern how much weight the trial court gave to the mistaken belief that Cerovic had more pendente lite support than she in fact received. Without knowing that the trial court would have come to the same determination under an accurate understanding of the pendente lite support, we must remand the question of alimony for the trial court's reassessment. We also note that if the trial court were to conclude on remand that Cerovic has proved by a preponderance of the evidence that the parties had a marriage prior to 2010, some factors in the alimony evaluation, such as the duration of the marriage, would change. In that event, the trial court should reconsider Cerovic's request for alimony.

## D. Sanction

Finally, Cerovic contends that the trial court erred by requiring her to pay for one day of Stojkov's attorney's fees as a sanction for presenting her argument under Serbian law on the eve of trial, without proper prior notice to Stojkov. She argues that the sanction amount should be reversed or reduced because the trial court offered a continuance to Stojkov so that he could respond to the Serbian law

argument, but his counsel requested that the trial continue as scheduled and the trial court took testimony from Cerovic that day.  In effect, she argues that because counsel would have been in court in any event, Stojkov suffered no prejudice as he had time to (and did) respond with his own memorandum of Serbian law.  Moreover, according to Cerovic, Stojkov already knew about the significance of Serbian law as evidenced by his motion *in limine* to preclude evidence about the parties' relationship in Serbia, on the ground that the law of the jurisdiction where the marriage occurred applied, citing *Bansda*, 995 A.2d at 198, and that as a civil law country, Serbia did not recognize common law marriage.  It was in response to this argument that Cerovic presented a memorandum on non-marital cohabitation under Serbian law.

We review a trial court's imposition of a sanction for abuse of discretion. *Id.* at 204-05.  After Cerovic submitted her memorandum of law on Serbian non-marital cohabitation two days before trial, the trial court stated that, "to be fair," the appropriate remedy was to continue the trial, so that Stojkov would have time to respond and the issue would be taken up at the next-scheduled trial date.  The court then awarded fees for the "lost" trial day.  Stojkov's counsel, however, asked that the trial go ahead that day because Stojkov had traveled to be present; Cerovic then took the stand as the first witness.

A party who "intends to raise an issue concerning the law of a foreign country shall give notice by pleadings or other reasonable written notice." Super. Ct. Civ. R. 44.1. As Cerovic was the proponent of a marriage under Serbian law, it was her burden to present the law of Serbia on that issue and to give "reasonable" written notice to Stojkov. As Cerovic did not give reasonable notice, in principle, the trial court could sanction her for not complying with Rule 44.1. In imposing the sanction, the trial court explained, "this aspect of the litigation was sufficiently complex that [Stojkov] required the services of an attorney," and concluded that an appropriate sanction was $1,516.66, based on counsel's hourly billing rate multiplied by the number of hours his attorney spent on the first day of trial. Notwithstanding our deference to the trial court on the imposition of sanctions, we are hard pressed to understand the sanction amount in light of the court's articulated rationale. There is no relationship between Stojkov's counsel's fees for the first day of trial (which went forward as scheduled) and the delay in providing notice of non-marital cohabitation under Serbian law, which was the subject of subsequent briefing and hearings. The trial court should reconsider the sanction on remand.

### III. Remand

We reverse and remand the case so that the trial court may (1) determine whether Cerovic proved, by a preponderance of the evidence, that she and Stojkov entered into a marriage under Serbian or District of Columbia law prior to 2010; (2) recalculate the parties' marital debt, without the attorney's fees incurred in connection with their divorce; (3) reconsider, in light of the recalculation of marital debt, and, possibly of marital property (if it is determined that the parties had a prior marriage), the equitable distribution between the parties under D.C. Code § 16-910, and, if appropriate, whether alimony payments to Cerovic are warranted under § 16-910 (d); (4) consider whether attorney's fees should be awarded to either party under D.C. Code § 16-911; and (5) reconsider the sanction.

*So ordered*.